J-S53009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTOINE JAMES MABLE, | |
| Appellant | No. 3211 EDA 2016 |

Appeal from the Judgment of Sentence Entered May 23, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000723-2015

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 01, 2018**

Appellant, Antoine James Mable, appeals from the judgment of sentence of an aggregate term of 30-60 months' incarceration, imposed following his conviction for promoting prostitution, conspiracy to promote prostitution, and transporting a prostitute. After careful review, we affirm on the basis set forth in the trial court's opinion.

The trial court set forth a summary of the facts adduced at trial in its Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion (TCO), 12/19/17, at 11-13. Briefly, the Commonwealth's evidence demonstrated that Appellant and his codefendant coaxed the victim to travel from Scranton to Monroe County, promising her protection in exchange for a share of her earnings as a prostitute. The codefendant then transported the victim from Scranton to Monroe County, picking up Appellant along the way. When the trio arrived at

a trailer home in Monroe County, the victim began to express reservations about the arrangement. In response, Appellant and the codefendant abused the victim, and detained her against her will overnight. The Commonwealth presented expert testimony that Appellant and his codefendant were members of a gang known for engaging in human trafficking for the purposes of prostitution.

The Commonwealth charged Appellant with rape, 18 Pa.C.S. § 3121; conspiracy (promoting prostitution), 18 Pa.C.S. § 903; involuntary deviate sexual intercourse, 18 Pa.C.S. § 3121; aggravated indecent assault, 18 Pa.C.S. § 3125; promoting prostitution (encouragement), 18 Pa.C.S. § 5902(b)(3); unlawful restraint, 18 Pa.C.S. § 2902; indecent assault, 18 Pa.C.S. § 3126; and promoting prostitution (transportation), 18 Pa.C.S. § 5902(b)(6). On March 9, 2016, a jury convicted Appellant of all the prostitution-related offenses (conspiracy, encouraging prostitution, and transporting a prostitute), but "was hopelessly deadlocked on the remaining charges[,]" leading the trial court to declare a mistrial with respect to the remaining counts. Post-Sentence Motion Opinion, 9/19/16, at 1. On May 23, 2016, the court sentenced Appellant to consecutive terms of 15-30 months' incarceration for conspiracy and encouraging prostitution, and to a concurrent term of 6-12 months' incarceration for transporting a prostitute. On June 2, 2016, Appellant filed a timely post-sentence motion. The trial court held a post-sentence motion hearing on July 13, 2016. The trial court ultimately denied the motion in an opinion and order dated September 19, 2016.

Appellant filed a timely notice of appeal and a timely, court-ordered Pa.R.A.P. 1925(b) statement. However, it appeared to this Court that the trial court issued neither a Rule 1925(a) opinion, nor a statement *in lieu* thereof, in response to Appellant's Rule 1925(b) statement; accordingly, this Court remanded for the trial court to issue its Pa.R.A.P. 1925(a) opinion by Judgment Order dated October 10, 2017.[1] The trial court complied, filing its Rule 1925(a) opinion on December 19, 2017. Accordingly, this appeal is now ripe for our review.

Appellant presents the following questions for our review:

I. Whether the Commonwealth should have been precluded from relying on expert testimony regarding gang affiliation, any reference to gang affiliation and/or activity and statements made by [Appellant] regarding said affiliation[?] Further, testimony from a "gang expert" and any mention of gang affiliation by any witness is irrelevant, more prejudicial than probative, and inherently inadmissible pursuant to Pa.R.E. 404(b).

II. Did the trial court err in denying [Appellant]'s omnibus pretrial motion seeking, *inter alia*, to preclude the conclusory term of "victim" when referencing the complaining witness[?]

III. Whether Appellant[']s convictions are contrary to the weight and sufficiency of the evidence presented where the Commonwealth's complaining witness testified in an

_____

[1] The trial court claims it issued a Rule 1925(a) statement on November 10, 2016. For whatever reason, that statement, if it exists, was not available to this Court at the time we remanded this matter, although the trial court docket does reflect that such a statement was filed. How, why, or where a breakdown in inter-court communication occurred is now a moot point, as the trial court has provided this Court with a comprehensive Rule 1925(a) opinion.

> inconsistent manner and there was insufficient evidence presented that [Appellant] was involved in a conspiracy to commit or engaged in any overt act to promote prostitution[?]

Appellant's Brief at 10.

After a thorough review of the record, Appellant's brief,[2] the applicable law, and the comprehensive and well-reasoned opinion of the trial court, we conclude that there is no merit to Appellant's claims on appeal, and do so based on the reasons set forth in that opinion. **See** TCO at 3-9 (rejecting Appellant's first claim, concerning the court's decision to permit expert testimony regarding his gang affiliation); at 9-10 (rejecting Appellant's second claim, regarding the Commonwealth's use of the term "victim" during his trial); at 10-17 (rejecting Appellant's third claim, as it pertains to the sufficiency of the evidence); at 17-18 (concluding that Appellant's third claim, as it pertains to the weight-of-the-evidence, has been waived due to his failure to raise it before the trial court).

Judgement of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/18

---

[2] The Commonwealth did not file a brief in this matter.

- 4 -

553009-17

## COURT OF COMMON PLEAS OF MONROE COUNTY
### FORTY-THIRD JUDICIAL DISTRICT
### COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | 723 CR 2015 |
| | : | |
| v. | : | |
| | : | 3211 EDA 2016 |
| | : | |
| | : | |
| ANTOINE JAMES MABLE, | : | APPEAL |
| Defendant | : | |

## STATEMENT PURSUANT TO Pa. R.A.P. 1925(a)

We submit this second 1925(a) statement in response to the Superior Court's request that

we address issues raised by Antoine James Mable (hereinafter "Appellant") in his brief. The

issues come before the Court on Appellant's appeal of his judgment of sentence. The factual and

procedural history of this case is as follows:

On March 9, 2016, after trial by jury, Appellant was convicted of two counts of

Promoting Prostitution and one count of Conspiracy to Commit Promoting Prostitution in

relation to the transportation of Jessica Kishbaugh to Monroe County for the purposes of

becoming a prostitute. The jury was hopelessly deadlocked on the remaining charges and this

Court declared a mistrial on those charges for manifest necessity.[1] The Commonwealth has not

pursued further prosecution or otherwise disposed of those charges.

A PSI was prepared and on May 23, 2016, this Court sentenced Defendant to 15 to 30

months incarceration for the Conspiracy charge, 15 to 30 months incarceration for the felony

Promoting Prostitution charge, and 6 to 12 months incarceration for the misdemeanor Promoting

---

[1] The jury was hung on the following charges: Rape—Threat by Forcible Compulsion, Involuntary Deviate Sexual Intercourse—Forcible Compulsion, Aggravated Indecent Assault—Without Consent, Unlawful Restraint, and Indecent Assault—Without Consent.

Prostitution charge. The sentences on Conspiracy and felony Promoting Prostitution were ordered to run consecutively while the misdemeanor Promoting Prostitution was ordered to run concurrently, giving Defendant a total aggregate sentence of 30 to 60 months incarceration. Defendant received a time credit of 417 days.

On June 2, 2016, Defendant filed post-sentence motions which were denied by Opinion and Order dated September 19, 2016. On October 17, 2016, Appellant filed his timely Notice of Appeal. We received Appellant's timely concise statement on November 8, 2016. In his concise statement, Appellant raised the following issues on appeal: (1) whether this Court erred in denying Appellant's Motion *in Limine* regarding gang affiliation; (2) whether this Court erred in denying Appellant's pre-trial motions regarding gang expert testimony, a psychological or psychiatric examination of the complaining witness, and preclusion of the Commonwealth's use of the term "victim;" (3) whether this Court erred in denying Appellant's post-sentence motions regarding his sentence; and (4) whether this Court erred in denying Appellant's post-sentence motion regarding sufficiency of the evidence.

On November 10, 2016 We issued a 1925(a) statement addressing all issues raised by Appellant in his 1925(b) statement. On October 11, 2017 the Pennsylvania Superior Court remanded for this court to file another 1925(a) statement. The Superior Court requested we specifically address "claims as set forth in Appellant's brief." Com. v. Mable, 3211 EDA 2016, 2 (Pa. Super. Ct. 2017). However, under the rule announced in Com. v. Lord, when a notice of appeal is filed and the trial court orders the Appellant to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in the 1925(b) statement will be deemed waived. Therefore any issues raised in a brief and not defendant's 1925(b) are waived and would not be addressed in this Court's statement.

2

Nevertheless, the Superior Court has asked us to address three specific claims:

1) Whether the Commonwealth should have been precluded from relying on expert testimony regarding gang affiliation, any reference to gang affiliation and/or activity and statements made by [appellant] regarding said affiliation? Further, testimony from a "gang expert" and any mention of gang affiliation by any witness is irrelevant, more prejudicial than probative, and inherently inadmissible pursuant to Pa.R.E. 404(b);

2) Did the trial court err in denying Appellant's omnibus pretrial motion seeking, *inter alia,* to preclude the conclusory term of "victim" when referencing the complaining witness;

3) Whether Appellant's conviction is contrary to the weight and sufficiency of the evidence presented where the Commonwealth's complaining witness testified in an inconsistent manner and there was insufficient evidence presented that Appellant was involved in a conspiracy to commit or engage in any overt act to promote prostitution.

Com. v. Mable, 3211 EDA 2016, 2-3 (Pa. Super. Ct. 2017).

We have previously addressed all of the issues requested by Opinion and Order. We addressed Appellant's first and second issue in our Omnibus Opinion and Order dated[2] August 26, 2015 page 18-24.[3] Similarly, we addressed Appellant's third issue in our Opinion and Order dated September 19, 2016 page 3-10 deciding appellants post-sentence motions. *See* both opinions attached hereto.

However, in order to stem any further confusion, We will address those issues again, below:

### 1. Request to bar expert testimony on gangs, in particular the Black P-Stones

Appellant asked this Court to bar the testimony of an expert on gangs. First, Appellant

---

[2] We note that the Order for our Omnibus Opinion is dated August 2, 2015, however, the docket reflects that it was filed August 26, 2015. We are unaware of the source of this discrepancy, however, we will hereinafter refer to this Opinion and Order by its docketing date for ease of reference.

[3] We further note that Appellant's first issue concerns his Motion *in Limine* regarding gang affiliation, however, in our Order dated December 4, 2015, denying said motion, we relied on our reasoning in our Omnibus Opinion and Order dated August 26, 2015, and continue to do so. Again, we note the August 2/August 26 dating discrepancy with regard to our reference in the December 4, 2015, Order.

argued that such testimony is irrelevant, particularly in his case, because there is no evidence in discovery that he is a part of the Black P-Stones. Appellant also posits that even if expert testimony on gangs is relevant, it is highly prejudicial and its admission would violate Pennsylvania Rules of Evidence 401, 402, and 403. Appellant also states that an expert on gang activity would not be allowed under Rule 702 because gangs are not outside the knowledge of the average lay person.

The Commonwealth responded that its proposed gang expert, Trooper William Patton, met the qualifications under Rule 702. Furthermore, the Commonwealth argued that testimony on gang activity is highly relevant because of the original conspiracy charges. Lastly, the Commonwealth agreed that Appellant should have known evidence of gang activity would be at issue because the affidavit of probable cause contains Appellant's street name.

The Appellant identified three issues regarding evidence of gang activity: the relevance of evidence of Appellant's alleged gang affiliation, the admissibility of such evidence on grounds of prejudice and Rule 404(b), and the admissibility of Trooper Patton's proposed testimony as an expert on gangs. Because relevance is a threshold determination, we will address that issue first.

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence . . . and . . . the fact is of consequence in determining the action." Pa.R.E. 401. The admissibility of evidence on relevance grounds is a threshold determination. Com. v. Cook, 952 A.2d 594, 602 (Pa. 2008). Furthermore, admission of evidence is within the sound discretion of the trial court. Com. v. Collins, 888 A.2d 564, 577 (Pa. 2005).

The main argument Appellant advanced with regard to relevance is that, at that time, he

4

had not been charged with crimes that had anything to do with gang activity. Appellant argued that the Commonwealth's theory that these charges were indicative of a larger scheme among the gang to traffic humans, was not relevant to the events as charged. Appellant had only been charged with sexual assault crimes at that time and, according to Appellant, none of the charges reflected the Commonwealth's theory of human trafficking.

Subsequently, Appellant's Criminal Information was amended to include two counts of Promoting Prostitution and one count each of Conspiracy. Proof of Promoting Prostitution under subsection (b)(3) requires a showing that a person "encourage[ed], induc[ed], or otherwise intentionally caus[ed] another to become or remain a prostitute." 18 Pa. C.S.A. § 5902(b)(3). Under subsection (b)(6), the Commonwealth must prove a person "transport[ed] a person into or within this Commonwealth with intent to promote the engaging in prostitution by that person, or procur[ed] or pay[ed] for transportation with that intent." § 5902(b)(6). Proof of Conspiracy under subsection (a)(1) requires a showing that a person intends to promote or facilitate the commission of a crime and "agrees with [another] person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." § 903(a)(1). Appellant's gang involvement made it more probable that he conspired to promote another to engage in prostitution and transported that person with the intent to promote prostitution than if they had only done these things of their own accord. *See* Com. v. Gwaltney, 422 A.2d 236, 241 (Pa. 1982) (holding trial court did not err in admitting gang affiliation evidence because such activity was relevant to the charge of conspiracy). Thus, evidence of gang involvement is relevant.

Appellant argued that if we found the gang evidence relevant, then the admission of such evidence would be unfairly prejudicial and thus violate Pa.R.E. 403. The Commonwealth did

5

not address prejudice but did relate that to suppress evidence of gang activity "would be to severely hamper the prosecution and to take away from the jury the ability to view all the evidence and weigh[] the credibility of each witness as to the Defendants' role in the events of that evening." Commonwealth's Br. in Opp'n to Defs.' Omnibus Pretrial Mots., p. 19.

Pennsylvania Rule of Evidence 403 mandates that a court must "exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice." Pa.R.E. 403. Unfair prejudice is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Rule 403, cmt. All evidence against a defendant in a criminal case will be prejudicial. Com. v. Peer, 684 A.2d 1077, 1083 (Pa. Super. 1996). Our determination must be whether evidence is *unfairly* prejudicial. Id.; *see also* Rule 403. While the trial court must exclude relevant but unfairly prejudicial evidence, we are "not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged." Com. v. Owens, 929 A.2d 1187, 1191 (Pa. Super. 2007) (quotation omitted). In order for it to be excluded, relevant evidence must be "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." Id. (quotation omitted). Additionally, the Supreme Court has instructed "that Rule 403 is a trial-oriented rule" and that pre-trial rulings weighing probative value and prejudice are best decided at trial, not pretrial. Com. v. Hicks, 91 A.3d 47, 53 (Pa. 2014).

There is evidence that Appellant was associated with the Black P-Stones gang. There is also evidence that one of the criminal enterprises of this gang is promoting prostitution. Appellant's affiliation with a gang that is known to engage in the crimes for which he has been

6

charged is highly probative to the case at bar. Such evidence "forms part of the history and natural development of the events and offenses" at issue. Furthermore, the Superior Court has commented that a jury can be instructed not to assume guilt simply because of gang affiliation. *See* Com. v. Whitfield, 419 A.2d 27, 29 (Pa. Super. 1980). Based on the information available to us, we found that evidence of gang affiliation was more probative than prejudicial.

Appellant also argued that evidence of gang affiliation would violate Pa.R.E. 404(b) in that gang affiliation would be an inadmissible "prior bad act." The Commonwealth argues that evidence of gang activity is relevant to Appellant's plans as they relate to the charge of Conspiracy.[4]

Pennsylvania Rule of Evidence 404(b) prohibits admitting evidence of a prior "crime, wrong, or other act" when such evidence is admitted to "show that on a particular occasion the person acted in accordance with the character" required to commit such crime, wrong, or other act. Pa.R.E. 404(b)(1). Such evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2). The Pennsylvania Supreme Court has held that admission of gang affiliation is proper when the Commonwealth alleges conspiracy as such evidence is highly probative of the crime of conspiracy and goes to prove "motive, intent, plan, design, ill will or malice." Gwaltney, 442 A.2d at 241.

Here, Appellant was charged with Conspiracy and Promoting Prostitution. The Commonwealth alleges that part of the conspiracy entails Appellant's involvement with the Black P-Stones and the gang's activities regarding prostitution. While evidence of gang

[4] The Commonwealth also stated that Com.v. Fragassa, 122 A. 88 (Pa. 1923), allows the introduction of evidence of gang membership. Since Appellant did not challenge this evidence on the grounds relevant in Fragassa, *see* Fragassa, 122 A. at 89 (holding that a defendant's membership in a society is assumed to continue unless proven otherwise), and because we find such evidence is admissible on other grounds, we did not further address this argument.

7

affiliation may be considered a prior bad act, such evidence was not being offered to show Appellant acted in accordance with the character associated with gang members. Instead, such evidence is highly probative of the Appellant's Conspiracy charges, motive, and his intent and plans to commit crimes involving prostitution. Thus, evidence of gang affiliation is admissible under Rule 404(b).

Having found that evidence of gang affiliation is properly admissible in this case, we turn to Trooper Patton and his proposed expert testimony. Appellant's only argument with regard to the admissibility of Trooper Patton's testimony under Rule 702 is that gang activity is not outside the knowledge of the average layperson. The Commonwealth responds that Trooper Patton's expertise and knowledge regarding gangs, in particular the Black P-Stones, is well beyond the knowledge of an average layperson and that Trooper Patton meets all the criteria under Rule 702 to testify as an expert.

Rule 702 states that a qualified expert may testify if the expert's specialized knowledge "is beyond that possessed by the average layperson." Pa.R.E. 702(a). Appellant cites to Burton v. Horn & Hardart Baking Co., 88 A.2d 873 (Pa. 1952) for the contention that "[e]xpert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject." Id. at 875. Appellant further cites Dooner v. Delaware & H. Canal Co., 30 A. 269 (Pa. 1894): "The jury still have [sic] some duties to perform. Inferences drawn from the ordinary affairs of life ought not to be drawn for them, and turned over under oath from the witness stand." Id. at 271–72.

Burton and Dooner was analyzed in the criminal context by the Pennsylvania Supreme Court in Com. v. Seese, 517 A.2d 920 (Pa. 1986). In Seese, the Supreme Court held the trial

8

court erred when it admitted expert testimony on the credibility of children witnesses. Id. at 922. The Court held that veracity is not a subject "beyond the facility of the ordinary juror." Id. However, in the present case, Trooper Patton testified to the inner workings of a complex criminal organization. His professional experience as a police officer and member of various gang task forces as well as his numerous trainings on gang-related subjects shows that the knowledge he possess about gangs would be far beyond that of the average layperson. Inferences regarding gang activity are simply not "drawn from the ordinary affairs of life." Thus, Trooper Patton possessed specialized knowledge that is beyond that possessed by the average layperson and is able to testify as an expert under Rule 702.

For the foregoing reasons, Defendants' request to bar expert testimony on gangs, in particular the Black P-Stones, was denied.

### 2. Request to preclude references to "gangs" or "gang activity"

As we have found evidence of gang activity to be relevant and admissible Defendants' request to preclude any references to "gangs" or "gang activity" was denied.

### 3. Request to bar the use of the term "victim"

Appellant asked this Court to bar the Commonwealth and its witnesses from using the term "victim" to describe Ms. Kishbaugh as it is conclusory and assumes a crime has been committed. It is well-established in Pennsylvania "that attorneys' statements or questions at trial are not evidence." Com. v. Freeman, 827 A.2d 385, 413 (Pa. 2003). Furthermore, "[a]n opinion [from a witness] is not objectionable just because it embraces an ultimate issue." Pa.R.E. 704. We understand that Appellant argues the term "victim" has been barred in other jurisdictions, however, use of the term "victim" in a criminal case in Pennsylvania is not objectionable.[5] Thus,

---

[5] A trial court's use of language such as "victim" is not reversible error unless the contested language unduly prejudiced the defendant. Com. v. Parente, 440 A.2d 549, 555 (Pa. Super. Ct. 1982) (holding trial court's use of

Appellant's Motion was denied.

### 4. Sufficiency of the Evidence

Appellant argues that the evidence produced at trial was insufficient for the jury to find him guilty of Promoting Prostitution because there was no evidence presented that Appellant was "engaged in the business of prostitution." Def.'s Br., p. 4. Similarly, Appellant argues that there was insufficient evidence to find him guilty of Conspiracy because the Commonwealth presented no evidence that Appellant entered into an agreement with Co-Defendant Klement, or any other person, to transport Ms. Kishbaugh to Monroe County for the purposes of promoting her prostitution. Def.'s Br., p. 9.

The Commonwealth, having failed to file a brief or make argument at that hearing, had no response.

In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt. Com. v. Eichinger, 915 A.2d 1122, 1130 (Pa. 2007); Com. v. Spotz, 759 A.2d 1280, 1283 (Pa. 2000). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." Com. v. Antidormi, 84 A.3d 736, 756 (Pa. Super. 2014) (quoting Com. v. Sanders, 627 A.2d 183, 185 (Pa. Super. 1993)). Moreover, the facts and circumstances need not be absolutely incompatible with the Appellant's innocence. See Com. v. Cruz-Centeno, 668 A.2d 536, 539 (Pa. Super. 1995). The question of any doubt is

word "victim" during trial was not so prejudicial to defendant as to warrant new trial). Any prejudice that might arise from the use of "victim" language is insignificant when the court gives jury instructions on the defendant's presumption of innocence, the Commonwealth's burden of proof, and the court's general role as impartial arbitrator. Id.

for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See* id.

To be found guilty of Promoting Prostitution under subsection (b)(3), the Commonwealth had to prove beyond a reasonable doubt that Appellant encouraged, induced, or otherwise intentionally caused another to become or remain a prostitute. 18 Pa. C.S.A. § 5902(b)(3). Similarly, to be found guilty of Promoting Prostitution under subsection (b)(6), the Commonwealth had to prove beyond a reasonable doubt that Appellant transported a person into or within the Commonwealth with the intent to promote the engaging in prostitution by that person, or procuring or paying for transportation with that intent. § 5902(b)(6).

The evidence presented at trial, viewed in the light most favorable to the Commonwealth, establishes the following:

In June of 2014, Appellant and Co-Defendant Klement contacted Ms. Kishbaugh, asking if she would like to make money as a prostitute in Monroe County. Notes of Testimony, Jury Trial 3/7/16, pp. 54–56 [hereinafter "N.T., Day 1, p. ___."]. Over the course of several conversations with Appellant and Co-Defendant Klement, Ms. Kishbaugh was informed that the two men would be her pimps and that they would pick her up from Scranton and transport her to Monroe County. N.T., Day 1, pp. 56–58. Additionally, Ms. Kishbaugh understood that as part of this arrangement, Appellant and Co-Defendant Klement would protect her in exchange for half of the money she made as a prostitute. N.T., Day 1, pp. 58–59. Ms. Kishbaugh agreed to this arrangement and Co-Defendant Klement picked Ms. Kishbaugh up from her home in Scranton on June 24, 2014. N.T., Day 1, pp. 59, 69–70. On the way from Scranton to Monroe County, Co-Defendant Klement also picked up Appellant, and the group went to a trailer home.[6]

---

[6] Through testimony other than Ms. Kishbaugh's, the Commonwealth presented evidence that this trailer home was in Polk Township, Monroe County. *See* N.T., Day 1, pp. 153, 155–160.

N.T., Day 1, p. 60. While at this home, Appellant and Co-Defendant Klement sexually assaulted Ms. Kishbaugh.[7] N.T., Day 1, pp. 65–69, 77–79. Co-Defendant Klement forced Ms. Kishbaugh to perform oral sex on him and Appellant forced Ms. Kishbaugh to receive oral sex from him and to have vaginal sex with him. N.T., Day 1, pp. 65–69, 77–79. These assaults were in response to Ms. Kishbaugh changing her mind about the arrangement, making Appellant angry that he had put time and effort in to bringing Ms. Kishbaugh to Monroe County to make money as a prostitute. *See* N.T., Day 1, p. 65.

Through the night of the 24th and into the morning of the 25th, Appellant and Co-Defendant Klement did not permit Ms. Kishbaugh to leave the trailer home, despite her continued insistence that she had changed her mind. N.T., Day 1, pp. 70–74. Appellant and Co-Defendant Klement hit Ms. Kishbaugh and restricted access to her cell phone in attempts to make her stay in the home. N.T., Day 1, pp. 73–74. Finally, Trooper William Patton testified as a gang expert, presenting evidence that Appellant and Co-Defendant Klement were members of a gang, the Black P-Stones, that participated in an activity known as "gorilla pimping," wherein young, impressionable girls would be lured into prostitution by gang members and not permitted to leave either by force, threat of force, or promise of drugs, while the gang members earned money, through the girls' prostitution, for the gang.[8] Notes of Testimony, Jury Trial 3/8/16, pp.

---

[7] We understand that the jury did not find Appellant guilty of the alleged sexual assaults, however, in viewing the evidence in the light most favorable to the Commonwealth on the charges the jury did find beyond a reasonable doubt, we do not decide the issue of Ms. Kishbaugh's credibility and consider the sexual activity as forced, per her testimony. *See* Cruz-Centeno, 668 A.2d at 539. ("It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced." (quotation omitted)).

[8] Appellant avers in his brief that the jury rendered guilty verdicts solely on the basis of Trooper Patton's testimony regarding Defendant's gang activity. Def.'s Br., p. 6. We are cognizant that this evidence cannot form the basis of a guilty verdict on the grounds that Defendant has the propensity to commit crime, as such a conclusion would be against the Rules of Evidence. *See* Pa.R.E. 404(b). However, as we stated in our Omnibus Opinion in this case, such evidence *can* be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Omnibus Opinion, 8/26/15, p. 22 (quoting Rule 404(b)(2)). Furthermore, the jury was instructed to view such evidence only in this limited manner during the jury charge. Notes of Testimony, 3/9/16, pp. 82–83 [hereinafter "N.T., Day 3, p. ___."]. We presume the jury followed our instructions, *see* Com. v. Jones, 668 A.2d 491, 503–04 (Pa. 1995), and we now view the evidence of Appellant's gang membership in the same way.

12

105–06, 112–13 [hereinafter "N.T., Day 2, p. ___."].

The above evidence, viewed in the light most favorable to the Commonwealth, establishes, beyond a reasonable doubt, that Appellant committed both charges of Promoting Prostitution. Appellant's knowledge of and involvement in transporting Ms. Kishbaugh to the trailer home where she was subsequently forced to stay and perform sexual acts is sufficient to support such a conviction and is not so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See* Cruz-Centeno, 668 A.2d at 539. These convictions are further supported by the evidence of Appellant's gang membership in that his actions in promoting Ms. Kishbaugh's prostitution were motivated by such membership, thereby also indicating his intent to engage in such promotion, his lack of mistake in doing so, and his knowledge that such promotion was occurring. We are satisfied that the evidence was sufficient to convict Appellant of both counts of Promoting Prostitution.[9]

We further find the evidence was sufficient to convict Appellant of Conspiracy to commit Promoting Prostitution. "A conviction for criminal conspiracy is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy." Com. v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citing 18 Pa. C.S.A. § 903). In this case, Appellant was charged with Conspiracy, generally, but the jury found him guilty only of Conspiracy to commit Promoting Prostitution. Thus, the only agreement we need to consider would be an agreement between Appellant and another person to commit the crime of Promoting Prostitution.

---

[9] Additionally, although Appellant did not physically drive the vehicle that transported Ms. Kishbaugh, he can still be guilty of the misdemeanor Promoting Prostitution charge through accomplice liability. *See* Com. v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002). However, in any event, Appellant's individual participation in arranging for Ms. Kishbaugh's transportation, for the purposes of prostitution, makes him guilty of Promoting Prostitution. *See* 18 Pa. C.S.A. § 5902(b)(6).

13

When presenting evidence to show a defendant made a criminal agreement with another, the Commonwealth will typically not have direct evidence of such agreement, and thus, "[a] conspiracy is almost always proven through circumstantial evidence." Id. The Superior Court has established four factors for courts to consider when deciding whether the evidence establishes that a conspiratorial agreement was formed: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." Id. (quoting Com. v. Olds, 469 A.2d 1072, 1075 (Pa. Super. 1983)). "The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." Id. Additionally, "[o]nce there is evidence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy." Id.

In the present case, the evidence presented showed "an association between alleged conspirators." Not only did co-defendant Klement pick up and drive Appellant to the trailer home, N.T., Day 1, pp. 69–70, but the two had gone to the same high school, N.T., Day 1, p. 52, 82, seemed to live in the same home, N.T., Day 1, p. 75, and were known to be members of the same gang. N.T., Day 1, p. 83. Furthermore, both Appellant and co-defendant Klement had been in contact with Ms. Kishbaugh about the same plan to bring her to Monroe County for prostitution. N.T., Day 1, pp. 54–56. The evidence also showed Appellant had "knowledge of the commission of the crime." Appellant was involved in the initial communications with Ms. Kishbaugh and explained his role as a pimp. N.T., Day 1, pp. 54–59. Indeed, in his brief, Appellant emphasizes that Ms. Kishbaugh was clear that her intentions upon arrival in Monroe County were to become a prostitute, Def.'s Br., p. 7, and Ms. Kishbaugh candidly testified to the

14

same at trial. N.T., Day 1, pp. 57–58. Further, the evidence at trial clearly established, and Appellant does not deny, *see* Def.'s Br., pp. 8–10, his "presence at the scene of the crime." Lastly, the evidence showed Appellant's "participation in the object of the conspiracy." By arranging for transportation, not allowing Ms. Kishbaugh to leave, and forcing her to perform sexual acts, with the ultimate goal that she become a prostitute, Appellant participated in the conspiracy to promote Ms. Kishbaugh's prostitution.

We understand that Appellant emphatically argues "mere presence at the scene of an incident involving purported criminal activity is insufficient to demonstrate an individual's guilt." Def.'s Br., p. 10. While we agree with that statement generally, *see* Lambert, 795 A.2d at 1016, the evidence in Appellant's case, as discussed above, shows much more than his "mere presence." The case Appellant cites to support this argument, Com. v. Mills, 478 A.2d 30 (Pa. Super. 1984), is readily distinguishable.

In Mills, the defendant was charged with conspiring with his co-defendant, William Gola, to sell methamphetamine to a Confidential Informant ("CI") and an undercover agent from the Bureau of Narcotics Investigation ("agent"). Mills, 478 A.2d at 31. When Mills arrived at Gola's apartment, the CI and agent were already there and had spoken with Gola about procuring methamphetamine from a man named "Karl." Id. When "Karl" could not be reached, Mills offered to sell the two men methamphetamine from the shipment he was to receive later that evening, but the offer was declined and the CI and agent returned to their car. Id. at 32. At the agent's request, the CI reentered Gola's apartment and asked him to come to the car. Id. When Gola came outside, Mills came with him and the four men proceeded to drive around looking for "Karl" and a quantity of methamphetamine. Id. No drugs or money were exchanged, however, Mills and Gola were both charged with Conspiracy approximately one month later. Id. at 31–32.

15

The Superior Court found that Mills could not be found guilty of Conspiracy because "the Commonwealth's evidence, direct *and circumstantial*, failed to prove the existence of a conspiracy between [Mills] and Gola." Id. at 33 (emphasis added). The Superior Court noted that the evidence showed Mills was aware the CI and agent were seeking methamphetamine and that Mills was willing to independently sell this substance to them. Id. However, the Court could not conclude from the evidence before it that Mills and Gola had formed an agreement to sell the methamphetamine together or were working to accomplish that common goal. Id. The Court also noted that there was no evidence of prior dealings between Mills and the CI, no statements from Mills or Gola that they were, or had ever, worked together, and no evidence that Mills would participate or profit from the transaction between Gola and the CI and agent. Id.

Appellant's case is distinguishable. While there may not have been direct evidence of statements indicating Appellant and co-defendant Klement were working together to accomplish a common, criminal goal, the circumstantial evidence indicates that these two men had an agreement. Appellant and co-defendant Klement were members of the same gang and engaged together in activity that correlated with the gang's methods of "gorilla pimping." *See* N.T., Day 1, pp. 54–59; N.T., Day 2, pp. 105–06, 112–13. Both Appellant and co-defendant Klement were in contact with Ms. Kishbaugh to settle details of the arrangement. N.T., Day 1, pp. 54–56. Both men reassured Ms. Kishbaugh that they would protect her and expect a cut of her profits in return. N.T., Day 1, p. 58–59. Finally, both men accompanied Ms. Kighbaugh to the trailer home where she was subsequently assaulted and kept from leaving. N.T., Day 1, pp. 59–60, 67. In Mills, there was no evidence, direct or circumstantial, that showed any connection between Mills and Gola. Mills, 478 A.2d at 33. Where the Superior Court in Mills faced a record devoid of connection between co-defendants, we face a very different scenario here. Thus, Mills is

distinguishable and Appellant's argument in reliance thereon fails.

Appellant also alleges the Commonwealth cannot rely on his "purported gang affiliation" to establish the existence of an agreement sufficient to support a conviction for Conspiracy. Def.'s Br., p. 11.[10] However, this argument has no merit as the four factors in Lambert were supported by independent, non-gang related evidence, which we have discussed above, at length. *See* Lambert, 795 A.2d at 1016. Despite Appellant's insistence, evidence of his gang affiliation was not the only evidence presented against him.

For the reasons stated above, Appellant's Motion for a New Trial or Judgment of Acquittal based on insufficiency of the evidence was denied.

### 5. *Weight of the Evidence*

Finally, the Superior Court specifically requested we address Appellant's weight-of-the-evidence claim.[11] This Court, however, was unaware of any weight-of-the-evidence claim on the part of the Appellant. "A claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial by one of the following: orally, on the record, at any time before sentencing, by written motion at any time before sentencing, in a post-sentence motion." Pa.R.Crim.P. 607 (A). At no time did Appellant raise a weight-of-the-evidence claim. A review of the transcript does not reveal any oral motions. *See* N.T., Trial, 3/9/16. Further, Appellant filed a written motion only challenging the sufficiency of the evidence. *See* Def's Motion for Mod. Of Sentence, p. 8 (In addition to the above, [Appellant] avers that the jury verdict was not based on sufficient evidence to substantiate same.). Appellant's challenge to only the sufficiency of the evidence is further supported by the

---

[10] Again, we note that the jury was instructed to view the evidence of Defendant's gang activity not as evidence that he committed a crime, but as evidence that his gang affiliation may show his intent, motive, knowledge, etc.

[11] The Superior Court requests we preliminarily determine whether Appellant adequately preserved that matter in his post-sentence motion.

17

Appellant's own brief in support of his post-sentence motions. *See* Def.'s Br. in Sup. Post Sent. Motions. Under the section titled "Issue" Defendant states:

> Was the evidence presented at trial sufficient to find beyond a reasonable doubt that the defendant, Antione Mable, was engaged in the business of prostitution and/or encouraged, induced, or caused the complaining witness to become a prostitute? ...
> Was all the evidence presented at trial, direct and circumstantial, sufficient to prove the elements of a conspiracy in that there was no proof that there existed an agreement between the defendant and his alleged co-conspirator?

Def.'s Br. in Sup. Post Sent. Motions, p. 4.

Challenges to the sufficiency of the evidence and the weight of the evidence are separate and distinct. Boilerplate motions asserting either type of challenge will not warrant appellate review. Challenges to a verdict on weight of the evidence grounds must state with particularity why the verdict was against the weight of the evidence. Com. v. Holmes, 461 A.2d 1268 (Pa. Super. Ct. 1983). Challenges to the weight of the evidence are distinct from sufficiency challenges and must be raised separately. *See* Pa.R.Crim.P. 607 [12]

Accordingly, all of Appellant's issues are without merit and nothing further remains to be determined at this time.

BY THE COURT:

_____
MARGHERITA PATTI-WORTHINGTON, P.J.

cc: District Attorney
Thomas P. Sundmaker, Esq.
Antoine James Mable, Defendant
Clerk of Courts
Prothonotary—Superior Court
MPW2017-060

Clerk of Courts
DEC 19 '17 PM4:3

---

[12] Unlike a sufficiency challenge, a challenge to the weight of the evidence requires the trial judge to assess the credibility of the testimony offered by the Commonwealth. For this reason, such challenges may not be raised for the first time on appeal but must always be raised initially with the trial judge. Com. v. Widmer, 744 A.2d 745 (Pa. 2000); Com. v. Tapper, 675 A.2d 740 (Pa. Super. Ct. 1996). *See also* Com. v. Hodge, 658 A.2d 386 (Pa. Super. Ct. 1995); Com. v. Widmer, 689 A.2d 211 (Pa. 1997)(distinguishing Commonwealth v. Hodge).

18

# COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : NO. 723 CR 2015 |
| | : |
| vs. | : |
| | : |
| ANTOINE JAMES MABLE, | : |
| | : |
| Defendant | : Omnibus Pre-Trial Motions |

## OPINION

This matter comes before the Court on the Omnibus Pre-Trial Motions of Antoine James Mable and Christopher John Klement (hereinafter "Defendants"). Defendant Mable and Defendant Klement, docketed separately at case number 1376 CR 2014, have been joined for trial. All charges arise out of the alleged sexual assault of Jessica Kishbaugh on June 24–25, 2014. Defendant Mable has been charged by Amended Criminal Information with one count of Rape,[1] one count of Conspiracy,[2] one count of Involuntary Deviate Sexual Intercourse ("IDSI"),[3] one count of Aggravated Indecent Assault,[4] two counts of Promoting Prostitution,[5] one count of Unlawful Restraint,[6] and one count of Indecent Assault.[7] Defendant Klement has been charged by Amended Criminal Information with two counts of IDSI,[8] one count of Conspiracy,[9] two counts of Aggravated Indecent Assault,[10] two counts of Promoting Prostitution,[11] one count of

---

[1] 18 Pa. C.S.A. § 3121(a)(2).
[2] § 903(a)(1).
[3] § 3123(a)(1).
[4] § 3125(a)(1).
[5] § 5902(b)(3), (6).
[6] § 2902(a)(2)
[7] § 3126(a)(1).
[8] § 3123(a)(1).
[9] § 903(a)(1).
[10] § 3125(a)(2).

1

Unlawful Restraint,[12] two counts of Indecent Assault,[13] one count of Simple Assault,[14] and two counts of Harassment.[15] The facts according to the Commonwealth are as follows:

Ms. Kishbaugh was picked up at her residence on June 24, 2014 by Defendant Mable and another male friend. Ms. Kishbaugh knew both of these men as they had all previously attended the same school. The male friend was dropped off at an unknown location and Defendant Klement was picked up. Ms. Kishbaugh voluntarily went with Defendants because they had promised Ms. Kishbaugh work as a waitress in the Pocono Mountains region.

When the group arrived at their final destination, a residence in Monroe County, Defendants informed Ms. Kishbaugh that she would not be working as a waitress but as a prostitute. Ms. Kishbaugh objected to this arrangement and was struck twice in the face by Defendant Klement. At this time, Ms. Kishbaugh's cell phone was taken from her. Defendant Klement then took Ms. Kishbaugh into the bathroom and forced her to perform oral sex on him. Thereafter, Defendant Mable forced Ms. Kishbaugh to have sexual intercourse with him in the shower. Ms. Kishbaugh was then locked in a bedroom overnight with Defendant Klement and was not allowed to leave the residence.

The following morning, June 25, 2015, Defendant Klement again forced Ms. Kishbaugh to perform oral sex on him. While she was attempting to get dressed, Defendant Mable sexually assaulted her a second time. Ms. Kishbaugh then indicated to Defendants that if she was not allowed to use her cell phone to call her sister, her sister would become suspicious. Under the guise of seeking cell phone reception, Ms. Kishbaugh exited the residence and fled to a neighboring house where she promptly called 911.

---

[11] § 5902(b)(3), (6).
[12] § 2902(a)(2).
[13] § 3126(a)(1).
[14] § 2701(a)(1).
[15] § 2709(a)(1).

2

Pennsylvania State Police Trooper Erin K. Cawley responded to the 911 call at approximately 2:30 p.m. on June 25, 2014. Ms. Kishbaugh was immediately transported to Pocono Medical Center. While at the hospital, a sexual assault examination was performed and Ms. Kishbaugh related the above events to Trooper Cawley.

Charges were filed against Defendant Klement on June 28, 2014 and he was arrested the same day. Charges were filed against Defendant Mable on July 24, 2014 and an arrest warrant was issued the same day. Defendant Mable, however, was not arrested until December 13, 2014.

On May 29, 2015, a detective from the Monroe County District Attorney's Office went to the Monroe County Correctional Facility for the purpose of taking photos of Defendant Mable's tattoos. While there, the detective initiated questioning regarding Defendant Mable's alleged gang activity and Defendant Mable answered those questions. There is no evidence that the detective informed Defendant Mable of his right have an attorney present for questioning, nor is there evidence Defendant Mable spontaneously waived that right.

After other pre-trial matters, both Defendants separately filed the present Omnibus Pre-Trial Motions and each Defendant has joined in the Motions of the other. A hearing on said Motions was held on July 28, 2015. After review of the record, counsels' briefs, and argument at the hearing, we are ready to dispose of these motions.

## DISCUSSION

1. *Request for involuntary psychiatric evaluation of Ms. Kishbaugh and disclosure of her medical records, or, in the alternative, a competency evaluation by the Court*

Both Defendants have asked this Court to order an involuntary psychiatric evaluation of Ms. Kishbaugh in order to determine her competency to testify at trial. Defendants aver that while at Pocono Medical Center, Ms. Kishbaugh related to the medical staff that she suffers from

3

schizophrenia and was under the influence of marijuana and alcohol during the events that led to the alleged sexual assault. Defendants argue that many of the symptoms of schizophrenia could cause Ms. Kishbaugh to falsely perceive and then report sexual assault. Furthermore, Defendants aver that her alleged mental condition coupled with admitted substance abuse would also render Ms. Kishbaugh incapable of being a competent witness.

Defendants also argue that, minimally, this Court should order the disclosure of Ms. Kishbaugh's mental health and medical records, or conduct an *in camera* review of these records, so that a defense expert can evaluate whether Ms. Kishbaugh's mental condition, substance abuse, and/or relevant medications could have had an effect on her ability to perceive events accurately and to tell the truth. Defendants ask, in the alternative, for the Court to observe Ms. Kishbaugh's testimony and evaluate competency.

The Commonwealth strongly opposes a psychiatric or psychological evaluation of Ms. Kishbaugh. The Commonwealth represents in its brief that a psychological evaluation of and/or the disclosure of mental health records for Ms. Kishbaugh would serve to re-victimize her as well as contravene the Pennsylvania Rules of Evidence and relevant case law. The Commonwealth also argues that nothing in discovery indicates that Ms. Kishbaugh's mental health affected her ability to relate events that occurred in connection with these crimes.

In Pennsylvania, witnesses are generally assumed to be competent to testify, regardless of mental condition, "unless [their testimony] contributes nothing at all because the witness is wholly untrustworthy." *Commonwealth v. Anderson*, 552 A.2d 1064, 1067 (Pa. 1988)(citation omitted). Pennsylvania Rule of Evidence 601 enumerates the conditions under which a witness could be rendered incompetent to testify:

> A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

4

(1) is, or was, at any relevant time, incapable of perceiving accurately;
(2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
(3) has an impaired memory; or
(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601(b). "[I]t is incumbent upon the party challenging the testimony to establish incompetence," *Anderson*, 552 A.2d at 1067, and the standard of proof is by clear and convincing evidence. *Commonwealth v. Boich*, 982 A.2d 102, 110 (Pa. Super. 2009). "A court-ordered, involuntary psychiatric or psychological examination should *never* be the starting point for a competency evaluation [of a witness]." *Id.* (quotation omitted)(emphasis added). Furthermore, substance abuse and use of antidepressant drugs at any relevant time are typically reserved for jury consideration as to witness credibility, not competency. *Id.* at 111.

Before a psychiatric or psychological evaluation is ordered, the Court should have an opportunity to observe the witness and continue to doubt the witness's competency. *Anderson*, 552 A.2d at 1067. Indeed, we "do[] not have the duty to order *any* investigation into a witness' competency unless the court has some doubt after observing the witness." *Commonwealth v. Henkel*, 938 A.2d 433, 440 (Pa. Super. 2007) (emphasis added) (holding the trial court did not err in denying a request for psychological examination of a witness and production of that witness's psychiatric records after the court observed the witness and found him competent). The Superior Court has suggested that a competency hearing should be held when the record reflects the witness would meet one or more of the factors under Rule 601 that would render that witness incompetent to testify. *See Commonwealth v. Alston*, 864 A.2d 539, 551 (Pa. Super. 2004) (finding that "prior allegations of abuse, which appear to be false, raise[d] concerns about [the victim's] ability to tell the truth, and a hearing to explore competency certainly [was]

5

warranted"). "A decision on the necessity of a competency hearing is addressed to the discretion of the trial court." *Commonwealth v. Delbridge*, 855 A.2d 27, 39 (Pa. 2003).

We find that Defendants have not met their burden with respect to Ms. Kishbaugh's alleged mental health issues affecting her ability to competently testify. First, the allegation of substance abuse is an issue of credibility properly reserved for the jury and we will not consider such alleged abuse in a competency evaluation. *See Boich*, 982 A.2d at 111. Second, based on the evidence before us, we do not doubt Ms. Kishbaugh's ability to testify competently. Ms. Kishbaugh's reiteration of events has been consistent in the police reports and affidavits that have been attached as exhibits to the various filings. There is no evidence to suggest she has, at any point, expressed an inability to remember. Nor have any of the reports indicated Ms. Kishbaugh is difficult to understand or to speak with, indicating she is able to adequately express herself. Furthermore, we have not been directed to any portion of Ms. Kishbaugh's testimony at the preliminary hearings in these matters that would raise a question as to her competency.[16]

While Ms. Kishbaugh has self-reported a diagnosis of schizophrenia, Defendants have only offered a list of typical symptoms to show that Ms. Kishbaugh is unable to perceive accurately or to tell the truth. There is no evidence before us to indicate Ms. Kishbaugh suffers from the symptoms Defendants claim would affect her competency (e.g. delusions and hallucinations). On the information before us in affidavits and police reports, we are not convinced that *Ms. Kishbaugh* suffers from these particular symptoms. The police officers and medical professionals, while documenting a diagnosis of schizophrenia, have not commented that this diagnosis has affected Ms. Kishbaugh as it relates to this case in any way.

---

[16] While Defendant Mable asks this Court to conduct a competency hearing "instead of relying simply on the transcripts from the preliminary hearing," Def.'s Mem. on Def.'s Omnibus Pre-Tr. Mots., p. 19, he has not pointed us to specific portions of the preliminary hearings that would establish a question as to Ms. Kishbaugh's competency. *See Alston*, 864 A.2d at 551.

6

We also understand Defendants aver the only way to determine Ms. Kishbaugh's medication regimen as it relates to her competency would be disclosure or an *in camera* review of her mental health records. We disagree. We are under no duty to order any investigation into a witness's competency unless we first doubt his or her competency and then continue to doubt his or her competency after observation. *See Henkel*, 938 A.2d at 440. Defendants have not met their burden with respect to Ms. Kishbaugh's competency and, thus, we have no reason to doubt she is able to competently testify. Therefore, a competency hearing would be inappropriate.[17]

Based on the foregoing reasons, Defendants' request for a competency hearing of Ms. Kishbaugh is DENIED. Defendants' requests for an involuntary psychiatric or psychological evaluation and for disclosure of Ms. Kishbaugh's mental health records are also DENIED.

2. *Request for expert fees*

Both Defendants have asked for fees to hire an expert to evaluate Ms. Kishbaugh and to counter the Commonwealth's § 5920 expert.[18] The Commonwealth only opposes these fees as they relate to an involuntary evaluation of Ms. Kishbaugh. The appointment of an expert to assist an indigent defendant in the preparation of his defense is within the sound discretion of the trial court. *Commonwealth v. Gelormo*, 475 A.2d 765, 769 (Pa. Super. 1984). While "[t]he state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them," "[t]here must be some showing as to the content and relevancy of the proposed testimony before such a request will be granted." *Commonwealth v. Curnutte*, 871 A.2d 839, 842 (Pa. Super. 2005)(citations and quotations omitted).

As we are denying Defendants' motions for an involuntary psychiatric evaluation of Ms.

---

[17] Moreover, the Commonwealth attached to its brief a document from discovery that clearly lists Ms. Kishbaugh's medications as "trazadone" and "lexapro." *See* Commonwealth Exhibit A.
[18] 42 Pa. C.S.A. § 5920.

7

Kishbaugh,[19] Defendants' motions for fees are DENIED for that purpose. However, as we are similarly denying Defendants' motions to bar the testimony of the Commonwealth's § 5920 expert,[20] the motions for fees are GRANTED for the purpose of addressing the Commonwealth expert's opinions.

### 3. *Request to bar expert testimony on Commonwealth's § 5920 expert or, in the alternative, a* Frye *hearing*

Both Defendants request that the Commonwealth be barred from offering an expert under 42 Pa. C.S.A. § 5920. Defendants first argue that § 5920 is unconstitutional. Defendants further argue that even if § 5920 is constitutional, the expert's testimony should still be barred because the subject matter on which she will testify is not outside the understanding of the jury and would only serve to bolster the Commonwealth's main witness, Ms. Kishbaugh. Lastly, Defendants state that if the Court is inclined to allow the testimony of a § 5920 expert, they would request a *Frye*[21] hearing to determine whether the science on which the expert will rely is generally accepted.

The Commonwealth intends to call Shea Rhodes, Esquire, as an expert under § 5920. In its brief, the Commonwealth responds to the Defendants' arguments regarding the constitutionality of § 5920 with the holding in *Commonwealth v. Carter*, 111 A.3d 1221 (Pa. Super. 2015). Furthermore, the Commonwealth avers that Attorney Rhodes possesses knowledge and expertise beyond the average layperson that would assist the trier of fact in this case and that such knowledge and expertise is clear from her *curriculum vitae*. Additionally, the Commonwealth argues that if an expert meets the qualification criteria in § 5920, such an expert cannot be challenged in a *Frye* hearing because the science used by such an expert is not novel

---

[19] See, *supra*, Section 1.
[20] See, *infra*, Section 3.
[21] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) *adopted in Pennsylvania by Commonwealth v. Topa*, 369 A.2d 1277, 1281 (Pa. 1977) *and reaffirmed in Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1043–44 (Pa. 2003).

8

and has been, to an extent, legislatively adopted.

The Pennsylvania Rules of Evidence "govern proceedings in all courts . . . except as otherwise provided by law." Pa.R.E. 101(a). Under these Rules,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Thus, an expert must first be qualified based on particular knowledge or skill and then offer testimony that is outside the understanding of laypeople, would be helpful to a jury, and is based on generally accepted science. In other words, the qualifications of an expert and the parameters of the testimony to be offered are distinct issues that must be addressed separately. The burden rests on the proponent to show his or her expert meets the criteria under Rule 702. *Commonwealth v. Walker*, 92 A.3d 766, 790 (Pa. 2014).

Preliminarily, we must note that we will not address Defendants' arguments that § 5920 is unconstitutional as the Superior Court has specifically upheld § 5920 as constitutionally sound in the face of the same arguments raised by Defendants. *Carter*, 111 A.3d at 1224.

Section 5920 enumerates specific types of educational and experiential qualifications for an expert offered under this section. 42 Pa. C.S.A. § 5920(b). A witness may be qualified as an expert under § 5920

> if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual

9

violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

§ 5920(b)(1). According to this rule, an expert's educational and experiential qualifications must be "beyond that possessed by the average layperson" and "will assist the trier of fact." *Id.* These factors are two of the three *testimonial* standards required in Rule 702. *See* Pa.R.E. 702(a), (b). Section 5920 does not specifically overrule or replace any Rules of Evidence. Thus, we will read Rule 702 and § 5920 in conjunction with one another. *See* Pa.R.E. 101(a), (b), cmt.

The Commonwealth argues that if an expert meets the *qualifications* under § 5920, then that expert's *testimony* is consequently admissible and, thus, cannot be challenged in a *Frye* hearing. Reading § 5920 and Rule 702 together, we disagree.

In support of their argument, the Commonwealth cites to *Commonwealth v. Dengler*, 890 A.2d 372 (Pa. 2005). In *Dengler*, the Supreme Court of Pennsylvania held that an expert's testimony as to Dengler's Sexually Violent Predator ("SVP") status could not be challenged in a *Frye* hearing because the science involved is not novel. *Id.* at 383. In so holding, the Supreme Court analyzed, *inter alia*, 42 Pa. C.S.A. § 9795.4(b)[22] which enumerates the specific areas an expert must assess when determining a defendant's SVP status. *Id.* at 374–75. We disagree with the Commonwealth's contention that the holding in *Dengler* is applicable to the present case because § 9795.4 and § 5920 are not analogous. Section 9795.4 enumerates a lengthy and very specific set of factors to be analyzed by an expert determining SVP status. *See id.* at 374–75 (quoting 42 Pa. C.S.A. § 9795.4(b)(1)–(4)). Moreover, the State Sexual Offenders Assessment Board is directed to "establish standards for evaluations and for evaluators conducting the assessments." *Id.* at 374 (quoting 42 Pa. C.S.A. § 9795.4(b)). The Supreme Court stated that the science at issue in *Dengler* "is responsive to, indeed is a direct byproduct of, a specific

---

[22] Section 9795.4 expired in December of 2012 but was replaced by § 9799.24. *See* 42 Pa.C.S.A. § 9799.41. However, § 9799.24 is essentially identical to the portions of § 9795.4 quoted by the Court in *Dengler*.

10

legislatively-adopted scheme which sets forth the relevance and contours of the challenged evidence." *Id.* at 383. Furthermore, the Supreme Court reasoned that "[b]ecause the legislature provided the framework for assessing whether an offender is an SVP, expert testimony tracking that framework, by definition, should be deemed generally accepted in the community of professionals who conduct SVP assessments." *Id.* at 383.

Section 5920 does not contain a "framework" for assessment of victims of sexual violence nor does the statute direct a "Board" to establish standards for such evaluations. Section 5920 merely enumerates the qualifications an expert must possess in order to testify regarding "dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted." 42 Pa. C.S.A. § 5920(b)(1). Nothing in § 5920 alters the factors for determining the admissibility of testimony under the Pennsylvania Rules of Evidence.

In reviewing Attorney Rhodes' *curriculum vitae*, she appears to meet the *educational and experiential qualifications* under § 5920 as she has served in multiple capacities dealing with criminal justice and victim services issues. Attorney Rhodes will be subject to *voir dire* at the time of trial, however, for purposes of this Motion, on the *curriculum vitae* presented, she meets the qualifications. Our inquiry, however, cannot end there. We must determine whether the *testimony* to be offered by Attorney Rhodes meets the standards under the Pennsylvania Rules of Evidence.

The first criterion in Rule 702 is that "the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson." Pa.R.E. 702(a). Section 5920 also addresses this factor. 42 Pa. C.S.A. § 5920(b)(1). Attorney Rhodes has an extensive background in victim advocacy, particularly in sexual exploitation, prostitution, and

11

human trafficking cases. She has worked as an Assistant District Attorney, prosecuting cases involving sexual abuse and violence and working closely with victims in that capacity. She has also worked as an attorney for various victim assistance programs, providing assistance to victims of sexual assault, rape, and stalking. Furthermore, Attorney Rhodes has obtained relevant certifications, including a completion certificate from the "Pennsylvania Coalition Against Rape, Human Trafficking in PA Communities: Indicators, Outreach and Response" and certification as a Human Trafficking Instructor through the "Municipal Police Officers Education and Training Commission." Her knowledge of the dynamics of sexual violence in certain types of cases and the effect of sexual violence on victims appears to be well beyond what the average layperson possesses. Therefore, Attorney Rhodes meets the first standard under Pa.R.E. 702 and continues to qualify as an expert under § 5920.

The second criterion is that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Pa.R.E. 702(b). Again, § 5920 also addresses this factor. 42 Pa. C.S.A. § 5920(b)(1). Defendants have alleged that any testimony Attorney Rhodes may offer as a § 5920 expert would not help the trier of fact because it would impermissibly encroach on the exclusive credibility-determining function of the jury. Defendants cite to *Commonwealth v. Gallagher*, 547 A.2d 355 (Pa. 1988), to support this argument. In *Gallagher*, the Supreme Court held that an expert witness's testimony on "rape trauma syndrome" (RTS) was impermissible because such testimony encroached on the credibility-determining function of the jury. *Id.* at 358–59.

*Gallagher* can be distinguished from the present case. The Supreme Court found in *Gallagher* that the expert's testimony was offered solely "to enhance the credibility of the victim." *Id.* The expert in *Gallagher* testified not only to general symptoms and reactions

12

associated with RTS but also that the victim in that case suffered from RTS and thus acted in accordance with the various symptoms. *Id.* at 356–57. In the present case, an expert under § 5920 is expressly prohibited from commenting on "the credibility of any other witness, including the victim" and thus cannot be offered to testify that a particular victim acted in accordance with general victim responses to sexual violence. 42 Pa. C.S.A. § 5920(b)(3). Furthermore, the Supreme Court of Pennsylvania has recently noted that "use of expert testimony in appropriate cases would permit jurors to make credibility determinations with full awareness [of a relevant issue] and, thus, assist the trier of fact in understanding evidence." *Commonwealth v. Walker*, 92 A.3d 766, 789 (Pa. 2014) (holding that expert testimony as to general eyewitness identifications is no longer *per se* inadmissible as an abridgement of the jury's credibility-determining function). Thus, a § 5920 expert may testify to educate the jury as to general victim responses to sexual violence, but may not testify as the expert did in *Gallagher*—to a specific victim's actions and whether that victim acted in accordance with general victim behavior.

We have already determined that Attorney Rhodes possesses specialized knowledge concerning the dynamics of sexual violence and the effects of such violence on sexual assault victims. Her testimony about these dynamics and effects, generally, would help the jury to understand evidence introduced by the Commonwealth, specifically, concerning Ms. Kishbaugh and her reactions to the alleged assaults against her. Such testimony by Attorney Rhodes would not usurp the jury's credibility-determining function, as Attorney Rhodes cannot comment on Ms. Kishbaugh's credibility, but would merely educate and inform the jury generally regarding victims of sexual assault and their reactions. Thus, Attorney Rhodes' proffered testimony meets the second standard of Pa.R.E. 702 and she continues to qualify under § 5920.

Lastly, we must determine whether "the expert's methodology is generally accepted in

13

the relevant field." Pa.R.E. 702(c). Section 5920 does *not* address this factor. To meet the burden imposed in subsection (c) of Rule 702, the proponent must show the expert's methodology meets the standard under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *See Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1044 (Pa. 2003). However, a proponent will only be required to make a showing under *Frye* when the court is convinced the expert's relied-upon methodology is novel. *Dengler*, 890 A.2d at 382 ("This Court has made it clear that *Frye* is not implicated every time science comes into the courtroom; rather, it applies only to proffered expert testimony involving *novel* science."). The Superior Court has described the *Frye* test as

> a two-step process. First, the party opposing the evidence must show that the scientific evidence is 'novel' by demonstrating that there is a legitimate dispute regarding the reliability of the expert's conclusions. If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute.

*Commonwealth v. Foley*, 38 A.3d 882, 888 (Pa. Super. 2012) (quotations omitted) *appeal denied Commonwealth v. Foley*, 38 A.3d 882 (Pa. 2013). The Supreme Court has held that "a reasonably broad meaning should be ascribed to the term 'novel' and a *Frye* hearing is warranted when a trial judge has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." *Walker*, 92 A.3d at 790 (quotations omitted).

Defendants cite to *Commonwealth v. Dunkle*, 602 A.2d 830 (Pa. 1992), for the contention that the science on which Attorney Rhodes likely relies has previously been deemed unreliable and inadmissible by our Supreme Court. The Court in *Dunkle* held that expert witness testimony on general victim behavior in a child sexual abuse case was impermissible because the science behind "Child Sexual Abuse Syndrome" was not generally accepted in the scientific community.

14

*Id.* at 832, 835.

*Dunkle* can be distinguished from the present case for several reasons. First, we note that *Dunkle* was decided in 1992. The Supreme Court of Pennsylvania has recognized that "[w]hat constitutes novel scientific evidence has historically been decided on a case-by-case basis, and there is some fluidity in the analysis; indeed, science deemed novel at the outset may lose its novelty and become generally accepted in the scientific community at a later date." *Dengler*, 890 A.2d at 382. Second, the particular testimony at issue in *Dunkle* was on "Child Sexual Abuse Syndrome." *Dunkle*, 602 A.2d at 832. While there has been alleged sexual abuse in the present case, Ms. Kishbaugh is not a child. Thus, "Child Sexual Abuse Syndrome" is not relevant to the present case and neither is the science pertaining to that syndrome. Lastly, the Superior Court has specifically commented that "*Dunkle* predates [§] 5920 and was . . . based on . . . existing case law and rules of evidence." *Carter*, 111 A.3d at 1224.

In the present case, Defendants argue that the science they assume Attorney Rhodes utilizes is outdated, has been recently critiqued, and, thus, is not generally accepted in the relevant field. The determination we must make before ordering a *Frye* hearing is whether Attorney Rhodes has "applied accepted scientific methodology in a conventional fashion." Defendants have not claimed that the studies they referenced at the hearing in this matter were conducted using methodologies that are novel to the relevant scientific community. Instead, Defendants argued the application of those studies to the present context has recently been critiqued. Such an argument is not the subject of a *Frye* hearing as the science involved is not novel. The Pennsylvania Supreme Court has stated that disputed *conclusions* are not subject to the *Frye* test. *See Commonwealth v. Puksar*, 951 A.2d 267, 276 (Pa. 2008) ("*Frye* does not operate to bar disputed conclusions of an expert, so long as the methodology employed is not

15

novel.").

Furthermore, Attorney Rhodes need not rely on any scientific studies to render an expert opinion. A witness may be qualified as an expert due to their "knowledge, skill, *experience, training, or education.*" Pa.R.E. 702 (emphasis added); *see also Commonwealth v. Smith*, 808 A.2d 215, 227 (Pa. Super. 2002) (quoting *Commonwealth v. Spozt*, 756 A.2d 1139, 1160 (Pa. 2000)) ("A witness may testify as an expert provided that he or she possesses a 'reasonable pretension to specialized knowledge on the subject matter in question.' It is well settled and established in this Commonwealth that expertise can be acquired though occupational experience as well as by scientific study."). As we have said, *Frye* is only implicated when an expert relies on novel scientific evidence to form an opinion.

For the reasons stated above, a *Frye* hearing is inappropriate at this time.[23]

Having found that Attorney Rhodes meets all criteria under Pa.R.E. 702 and 42 Pa. C.S.A. § 5920 to testify as an expert, Defendants' Motion to conclusively bar her testimony is DENIED. Furthermore, Defendants not having presented sufficient evidence which would give us articulable grounds that the science, if any, on which Attorney Rhodes relies is novel, Defendants' request for a *Frye* hearing is DENIED.

### 4. *Request to compel an expert report from the expert on sexual violence*

Both Defendants request that Attorney Rhodes be required to produce an expert report pursuant to Pa.R.E. 573(B)(2)(b) so that the Defendants may be fully prepared in their defense. Currently, the only documentation that has been turned over to Defendants is Attorney Rhodes' *curriculum vitae.* Defendants aver that an expert under § 5920 is a fairly new type of expert in Pennsylvania and, specifically, in Monroe County. Furthermore, Defendants argue that they are

---

[23] We recognize that Defendants have not yet had the benefit of an expert report from Attorney Rhodes. If, upon receipt of a report from Attorney Rhodes, Defendants continue to contend her methodology is novel, they may again petition this Court for a *Frye* hearing.

16

unable to determine what the substance of this expert's testimony will be at trial based solely on her *curriculum vitae*. Defendants explain that they simply need more information regarding this expert's testimony and the science on which she bases her opinions.

The Commonwealth has represented that its expert, Attorney Rhodes, will only be testifying to general victim behavior in sexual assault cases, is not permitted under § 5920 to conduct an evaluation of Ms. Kishbaugh, and, thus, will not be preparing a report.

As discussed above, § 5920 mandates specific qualifications for an expert called to testify generally about victim behavior in certain types of criminal cases. 42 Pa. C.S.A. § 5920. Section 5920 does not mention anything about reports from these types of experts. However, elsewhere in Pennsylvania law, we find instructive rules regarding expert discovery material.

Pa.R.E. 573(B)(2)(b) states that, at the discretion of the trial court, where a Commonwealth expert has not previously prepared "a report of examination or tests," we may

> order that the expert prepare, and that the attorney for the
> Commonwealth disclose, a report stating the subject matter on which
> the expert is expected to testify; the substance of the facts to which the
> expert is expected to testify; and a summary of the expert's opinions
> and the grounds for each opinion.

Pa.R.E. 573(B)(2)(b). This rule does not require an expert to conduct examinations or tests in order to prepare a report regarding his or her testimony. In fact, the Rule contemplates that a report under this section will be ordered in the *absence* of examinations or tests. Thus, regardless of whether Attorney Rhodes may or may not evaluate Ms. Kishbaugh under § 5920, we may still order her to prepare a report under Rule 573. Even an expert testifying to general behaviors in certain contexts can produce a report which states the subject matter of their testimony and the grounds for any opinions they may offer.

We find that Defendants have shown a reasonable need for a report from Attorney

17

Rhodes. Therefore, Defendants' Motions for an expert report are GRANTED. Attorney Rhodes shall prepare a report pursuant to Pa.R.E. 573(B)(2)(b) and the attorney for the Commonwealth shall promptly disclose such report to defense counsel.

### 5. Request to bar the use of the term "victim"

Both Defendants have asked this Court to bar the Commonwealth and its witnesses from using the term "victim" to describe Ms. Kishbaugh as it is conclusory and assumes a crime has been committed. This Motion was denied from the bench at the hearing in this matter. However, by way of further explanation, it is well-established in Pennsylvania "that attorneys' statements or questions at trial are not evidence." *Commonwealth v. Freeman*, 827 A.2d 385, 413 (Pa. 2003). Furthermore, "[a]n opinion [from a witness] is not objectionable just because it embraces an ultimate issue." Pa.R.E. 704. We understand that Defendants argue the term "victim" has been barred in other jurisdictions, however, use of the term "victim" in a criminal case in Pennsylvania is not objectionable. Thus, Defendants' Motion is DENIED.

### 6. Request to bar expert testimony on gangs, in particular the Black P-Stones

Both Defendants have asked this Court to bar the testimony of an expert on gangs. First, Defendants argue that such testimony is irrelevant. Defendant Mable argues that gang evidence is especially irrelevant in his case because there is no evidence in discovery that he is a part of the Black P-Stones. Defendants also posit that even if expert testimony on gangs is relevant, it is overly prejudicial and its admission would violate Pennsylvania Rules of Evidence 401, 402, and 403. Defendants also state that an expert on gang activity would not be allowed under Rule 702 because gangs are not outside the knowledge of the average lay person.

The Commonwealth responds that its proposed gang expert, Trooper William Patton, meets the qualifications under Rule 702. Furthermore, the Commonwealth states that it has

18

provided all requisite notices to the defense and has no duty to disclose its theory of the case. The Commonwealth also argues that testimony on gang activity is highly relevant because of the original conspiracy charges. Lastly, the Commonwealth avers that Defendants should have known evidence of gang activity would be at issue for both of them because the affidavits of probable cause for arrest contain Defendants' street names.

The parties have identified three issues in regard to evidence of gang activity: the relevance of evidence of Defendants' alleged gang affiliation, the admissibility of such evidence on grounds of prejudice and Rule 404(b), and the admissibility of Trooper Patton's proposed testimony as an expert on gangs. Because relevance is a threshold determination, we will address that issue first.

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence . . . and . . . the fact is of consequence in determining the action." Pa.R.E. 401. The admissibility of evidence on relevance grounds is a threshold determination. *Commonwealth v. Cook*, 952 A.2d 594, 602 (Pa. 2008). Furthermore, admission of evidence is within the sound discretion of the trial court. *Commonwealth v. Collins*, 888 A.2d 564, 577 (Pa. 2005).

At the time Defendants submitted their briefs, the Criminal Informations had not been amended. The main argument Defendants advanced with regard to relevance is that, at that time, neither Defendant had been charged with crimes that had anything to do with gang activity. Defendants argued that the Commonwealth's theory that these charges were indicative of a larger scheme among the gang to traffic humans, was not relevant to the present events. Defendants had only been charged with sexual assault crimes at that time and, according to

19

Defendants, none of the charges reflected the Commonwealth's theory of human trafficking.

As of the date of this Opinion, Defendants' Criminal Informations have been amended to include two counts each of Promoting Prostitution and one count each of Conspiracy. Proof of Promoting Prostitution under subsection (b)(3) requires a showing that a person "encourage[ed], induc[ed], or otherwise intentionally caus[ed] another to become or remain a prostitute." 18 Pa. C.S.A. § 5902(b)(3). Under subsection (b)(6), the Commonwealth must prove a person "transport[ed] a person into or within this Commonwealth with intent to promote the engaging in prostitution by that person, or procur[ed] or pay[ed] for transportation with that intent." § 5902(b)(6). Proof of Conspiracy under subsection (a)(1) requires a showing that a person intends to promote or facilitate the commission of a crime and "agrees with [another] person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." § 903(a)(1). Defendants' gang involvement would make it more probable that they conspired to promote another to engage in prostitution and transported that person with the intent to promote prostitution than if they had only done these things of their own accord. *See Commonwealth v. Gwaltney*, 422 A.2d 236, 241 (Pa. 1982) (holding trial court did not err in admitting gang affiliation evidence because such activity was relevant to the charge of conspiracy). Thus, evidence of gang involvement is relevant.

Defendants argue that if we find gang evidence is relevant, then the admission of such evidence would be unfairly prejudicial and thus violate Pa.R.E. 403. The Commonwealth does not address prejudice but does relate that to suppress evidence of gang activity "would be to severely hamper the prosecution and to take away from the jury the ability to view all the evidence and weigh[] the credibility of each witness as to the Defendants' role in the events of that evening." Commonwealth's Br. in Opp'n to Defs.' Omnibus Pretrial Mots., p. 19.

20

Pennsylvania Rule of Evidence 403 mandates that a court must "exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice." Pa.R.E. 403. Unfair prejudice is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Rule 403, cmt. All evidence against a defendant in a criminal case will be prejudicial. *Commonwealth v. Peer*, 684 A.2d 1077, 1083 (Pa. Super. 1996). Our determination must be whether evidence is *unfairly* prejudicial. *Id.*; *see also* Rule 403. While the trial court must exclude relevant but unfairly prejudicial evidence, we are "not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged." *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa. Super. 2007) (quotation omitted). In order for it to be excluded, relevant evidence must be "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Id.* (quotation omitted). Additionally, the Supreme Court has instructed "that Rule 403 is a trial-oriented rule" and that pre-trial rulings weighing probative value and prejudice are best decided at trial, not pretrial. *Commonwealth v. Hicks*, 91 A.3d 47, 53 (Pa. 2014).

There is evidence that Defendants were associated with the Black P-Stones gang.[24] There is also evidence that one of the criminal enterprises of this gang is promoting prostitution. Defendants' affiliation with a gang that is known to engage in the crimes for which they have been charged is highly probative to the case at bar. Such evidence "forms part of the history and natural development of the events and offenses" at issue. Furthermore, the Superior Court has

---

[24] We understand that Defendant Klement avers there is no evidence to show he is associated with the Black P-Stones. However, a police report attached as Exhibit F to the Commonwealth's Brief indicates that Ms. Kishbaugh related that Defendant Klement, aka "Trillz," and Defendant Mable, aka "Ace," are alleged members of the Black P-Stones. Thus, evidence does exist to show both Defendants are members of this gang.

21

commented that a jury can be instructed not to assume guilt simply because of gang affiliation.

*See Commonwealth v. Whitfield*, 419 A.2d 27, 29 (Pa. Super. 1980). Based on the information

presently available to us, we find that evidence of gang affiliation, at this juncture, is more

probative than prejudicial. However, this issue may, and possibly should, be raised again at trial

pursuant to the Supreme Court's holding in *Hicks*.

Defendants have also argued that evidence of gang affiliation would violate Pa.R.E.

404(b) in that gang affiliation would be an inadmissible "prior bad act." The Commonwealth

argues that evidence of gang activity is relevant to Defendant's plans as they relate to the charge

of Conspiracy.[25]

Pennsylvania Rule of Evidence 404(b) prohibits admitting evidence of a prior "crime,

wrong, or other act" when such evidence is admitted to "show that on a particular occasion the

person acted in accordance with the character" required to commit such crime, wrong, or other

act. Pa.R.E. 404(b)(1). Such evidence may be admitted to show "motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2).

The Pennsylvania Supreme Court has held that admission of gang affiliation is proper when the

Commonwealth alleges conspiracy as such evidence is highly probative of the crime of

conspiracy and goes to prove "motive, intent, plan, design, ill will or malice." *Gwaltney*, 442

A.2d at 241.

Here, both Defendants have been charged with Conspiracy and Promoting Prostitution.

The Commonwealth alleges that part of the conspiracy entails Defendants' involvement with the

Black P-Stones and the gang's activities regarding prostitution. While evidence of gang

---

[25] The Commonwealth also states that *Commonwealth v. Fragassa*, 122 A. 88 (Pa. 1923), allows the introduction of evidence of gang membership. Since Defendants have not challenged this evidence on the grounds relevant in *Fragassa, see Fragassa*, 122 A. at 89 (holding that a defendant's membership in a society is assumed to continue unless proven otherwise), and because we find such evidence is admissible on other grounds, we will not further address this argument.

22

affiliation may be considered a prior bad act, such evidence is not being offered to show Defendants acted in accordance with the character associated with gang members. Instead, such evidence is highly probative of the Defendants' Conspiracy charges, motive for committing a conspiracy, and their intent and plans to commit crimes involving prostitution. Thus, evidence of gang affiliation is not excludable under Rule 404(b).

Having found that evidence of gang affiliation is properly admissible in this case, we turn to Trooper Patton and his proposed expert testimony. Defendants' only argument with regard to the admissibility of Trooper Patton's testimony under Rule 702 is that gang activity is not outside the knowledge of the average layperson.[26] The Commonwealth responds that Trooper Patton's expertise and knowledge regarding gangs, in particular the Black P-Stones, is well beyond the knowledge of an average layperson and that Trooper Patton meets all the criteria under Rule 702 to testify as an expert.

Rule 702 states that a qualified expert may testify if the expert's specialized knowledge "is beyond that possessed by the average layperson." Pa.R.E. 702(a). Defendants cite to *Burton v. Horn & Hardart Baking Co.*, 88 A.2d 873 (Pa. 1952) for the contention that "[e]xpert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject." *Id.* at 875. Defendants further cite *Dooner v. Delaware & H. Canal Co.*, 30 A. 269 (Pa. 1894): "The jury still have [sic] some duties to perform. Inferences drawn from the ordinary affairs of life ought not to be drawn for them, and turned over under oath from the witness stand." *Id.* at 271–72.

---

[26] We note Defendant Klement also argues that Trooper Patton's expert testimony with regard to Defendant Klement's alleged involvement in the Black P-Stones would not be based on sufficient facts or data in violation of Pa.R.E. 703. Defendant Klement avers the only evidence linking him to the Black P-Stones is Trooper Patton's own belief that he is a member. *See* Def.'s Br. in Support of Omnibus, p. 22. As we discussed above, *see supra* n.23, independent evidence exists to show Defendant Klement is associated with the Black P-Stones as Ms. Kishbaugh has related the same to police. Thus, Defendant Klement's argument regarding Rule 703 holds no merit.

23

The cases Defendants cite were analyzed more recently in the criminal context by the Pennsylvania Supreme Court in *Commonwealth v. Seese*, 517 A.2d 920 (Pa. 1986). In *Seese*, the Supreme Court held the trial court erred when it admitted expert testimony on the credibility of children witnesses. *Id.* at 922. The Court held that veracity is not a subject "beyond the facility of the ordinary juror." *Id.* However, in the present case; Trooper Patton will be testifying to the inner workings of a complex criminal organization. His professional experience as a police officer and member of various gang task forces as well as his numerous trainings on gang-related subjects shows that the knowledge he possess about gangs would be far beyond that of the average layperson. Inferences regarding gang activity are simply not "drawn from the ordinary affairs of life." Thus, Trooper Patton possesses specialized knowledge that is beyond that possessed by the average layperson and is able to testify as an expert under Rule 702.

For the foregoing reasons, Defendants' request to bar expert testimony on gangs, in particular the Black P-Stones, is DENIED.

### 7. *Request to preclude references to "gangs" or "gang activity"*

As we have found evidence of gang activity to be relevant and admissible at this juncture, see, *supra*, Section 6, Defendants' request to preclude any references to "gangs" or "gang activity" is DENIED.

### 8. *Requests to suppress statements made by Defendant Mable to police*

Defendant Mable avers that the statements he made to the detective who questioned him on May 29, 2015 at Monroe County Correctional Facility should be suppressed because the statements were obtained in violation of his constitutional rights. At the hearing in this matter, the Commonwealth agreed that the statements made by Defendant Mable on May 29, 2015 would be appropriately suppressed and represented that those statements will not be used against

24

Defendant Mable at trial. In its brief, the Commonwealth reserved the right to use the statements on rebuttal, if necessary.

Defendants enjoy the right to an attorney and to have that attorney present for any and all custodial interrogation. *See Commonwealth v. Petrino*, 480 A.2d 1160, 1165-66 (Pa. Super. 1984) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). If a defendant asserts this right, such protections exist unless and until the defendant later waives such right. *Id.* at 1166-67. The remedy for statements obtained in violation of this right is suppression of those statements at trial. *Commonwealth v. Abbas*, 862 A.2d 606, 609 (Pa. Super. 2004) (citing *United States v. Patane*, 542 U.S. 630 (2004)). When a defendant alleges that evidence was obtained in violation of *Miranda*, the burden is on the Commonwealth to prove the defendant knowingly and voluntarily waived his right. *Commonwealth v. Kunkle*, 79 A.3d 1173, 1180 (Pa. Super. 2013). Additionally, statements that have been suppressed, but are otherwise *voluntary*, may be used by the Commonwealth on rebuttal. *See Commonwealth v. Busanet*, 54 A.3d 35, 39-40 (Pa. 2012) (citing PA. CONST. Art. 1, § 9). However, statements made absent a warning against self-incrimination are presumptively *involuntary*. *Commonwealth v. DiStefano*, 782 A.2d 574, 579 (Pa. Super. 2001).

There is no question or dispute that Defendant Mable was under custodial interrogation when he was questioned at Monroe County Correctional Facility. *See Commonwealth v. Chacko*, 459 A.2d 311, 314 (Pa. 1983) (stating that an incarcerated individual is "in custody" for purposes of *Miranda*). At the hearing, the Commonwealth conceded that Defendant Mable had previously invoked his right to an attorney but that his attorney was not present during the questioning. At no time has the Commonwealth alleged that the detective advised Defendant Mable of his *Miranda* rights or obtained a waiver of the same. Under these circumstances, any statements

25

made by Defendant Mable during that meeting should be suppressed and the Commonwealth will not be permitted to use them during its case-in-chief. Furthermore, the Commonwealth has also failed to allege and prove that despite a lack of *Miranda* warnings, Defendant Mable's statements were still voluntary. Statements made absent a warning against self-incrimination are presumptively *involuntary* and the Pennsylvania Constitution only allows for the use of suppressed *voluntary* statements on rebuttal. The Commonwealth, therefore, may not use the statements made by Defendant Mable on rebuttal.

Defendant Mable also seeks to suppress the photographs taken during the interrogation on May 29, 2015. Defendant Mable avers the same argument regarding violation of his *Miranda* rights applies and requires the suppression of the photographs. The Commonwealth argues that the photographs could have been obtained with a search warrant and thus suppression would be inappropriate.

By arguing his *Miranda* rights have been violated by the taking of these photographs, Defendant is essentially invoking his right against self-incrimination under the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. *See Commonwealth v. Hayes*, 674 A.2d 677, 679 (Pa. 1996). Only evidence that is testimonial in nature receives these constitutional protections. *Id.* (quoting *Schmerber v. California*, 384 U.S. 757 (1966)). After a diligent search, we are unable to find any precedent within Pennsylvania that addresses whether photographs of tattoos are testimonial evidence subject to constitutional protections. *But see Commonwealth v. Cousar*, 928 A.2d 1025, 1040 (Pa. 2007) (finding photographs of gang tattoos were admissible on other grounds).

However, Pennsylvania has determined that "the Fifth Amendment protection against self-incrimination is a bar against 'communications' or 'testimony,' not *physical evidence* which

26

the accused is compelled to produce, even if that physical evidence incriminates the accused." *Id.* at 679 (emphasis added). Furthermore, there is persuasive authority from other jurisdictions that have relied on this rationale, *inter alia*, to hold photographs of tattoos are not testimonial evidence. *See, e.g., State v. Tiner*, 135 P.3d 305, 311–12 (Or. 2006) ("[T]he state and federal privileges apply to only testimonial evidence—the communication of a person's belief, knowledge, or state of mind—but not to [a] defendant's physical characteristics, such as identity, appearance, and physical condition." (citations omitted)); *People v. Slavin*, 807 N.E.2d 259, 263 (N.Y. 2004) ("Indeed, it is a settled proposition that a person may be required to produce specific documents in response to a subpoena even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." (quotations omitted)).

Without guidance from mandatory authority on this issue, we find the analysis from our sister states persuasive and agreeable with the law the Pennsylvania Supreme Court has adopted. Thus, we hold that the photographs taken of Defendant Mable's tattoos were not testimonial evidence and thus not subject to constitutional protections against self-incrimination. Therefore, the fact that Defendant Mable was not read *Miranda* warnings prior to his tattoos being photographed does not render the photographs inadmissible at trial.[27]

For the foregoing reasons, Defendant Mable's Motion to Suppress is GRANTED in part and DENIED in part. Any and all statements made by Defendant Mable to the detective on May 29, 2015 are suppressed and are not available to the Commonwealth in its case-in-chief or on rebuttal. The photographs taken by the detective of Defendant Mable are not suppressed.

---

[27] We do not address the Commonwealth's argument that a search warrant could have been obtained for the photographs because such an argument involves Fourth Amendment privileges, see U.S. CONST. amend. IV; PA. CONST. art. I, § 8, which Defendant Mable has not raised.

### 9. *Request to suppress information from Defendant Mable's Facebook page*

Defendant Mable asserts that a search warrant was executed for all information regarding his Facebook page. Defendant Mable maintains that this search warrant was unconstitutionally broad in content and timeframe. Specifically, Defendant Mable alleges that the search warrant was overly broad due to the following language describing the items to be seized: "basic subscriber information, user photos, group information, private messages, IP logs and any other content included on the Facebook profile." Def.'s Mem. on Def.'s Omnibus Pre-Trial Mots., p. 15 (quoting Aff. of Probable Cause, May 1, 2015, ¶ 13). Furthermore, Defendant Mable avers there was no probable cause to seize any information from his Facebook page because the only reason given in the affidavit of probable cause was that the information "will greatly assist in this investigation." *Id.* (quoting Aff. of Probable Cause, May 1, 2015, ¶ 13).

The Commonwealth responds that digital discovery rules have not yet been fully developed in Pennsylvania. The Commonwealth avers the only information it had with regard to Facebook was that Ms. Kishbaugh communicated with Defendants via Facebook. The Commonwealth argues that in order to obtain the precise information it seeks on a personal website like Facebook, "the Commonwealth is constrained to request enough to ferret through the information and find where the hidden messages may be or where the different forms of communication are stored." Commonwealth's Br. in Opp'n to Defs.' Omnibus Pretrial Mots., p. 21.

Search and seizure law as it pertains to digital information is still developing in Pennsylvania. *See Commonwealth v. Orie*, 88 A.3d 983, 1009 n.43 (Pa. Super. 2014). Currently, courts continue to rely on traditional constitutional rules when analyzing digital data. *See, e.g., Commonwealth v. Sodomsky*, --- A.3d ---, 2015 WL 3533863, *6 (Pa. Super. 2015) (using

28

traditional rules regarding the definition of a search to conclude that the digital data stored on a computer is subject to constitutional protections); *Orie*, 88 A.3d at 1008–09 (ruling that a search warrant was overbroad due to traditional search and seizure jurisprudence where the items to be seized were, *inter alia,* "any contents contained [in a USB drive], including all documents, images, recordings, spreadsheets or any other data stored in digital format"); *Commonwealth v. Dougalewicz,* 113 A.3d 817, 827 (Pa. Super. 2015) (relying on "fundamental rule[s] of law" in analyzing whether a search warrant for information from a cell phone was overbroad); *Commonwealth v. Proetto,* 771 A.2d 823, 830 (Pa. Super. 2001) (holding that, based on existing case law regarding reasonable expectation of privacy, chatroom conversations between a defendant and victim did not invoke constitutional protections).

Generally, search warrants "must name or describe with particularity the property to be seized and the person or place to be searched." *Dougalewicz,* 113 A.3d at 827 (quoting *Orie,* 88 A.3d at 1002–03). "Particularity" under the Pennsylvania Constitution means that "a warrant must describe the items as specifically as is reasonably possible." *Id.* (quoting *Orie,* 88 A.3d at 1002–03). When a court is presented with a challenge to a search warrant for being overly broad, "[it] must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between items for which there was probable cause and the description in the warrant requires suppression." *Id.* (quoting *Orie,* 88 A.3d at 1002–03). "Probable cause [for a search warrant] exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones,* 988 A.2d 649, 655 (Pa. 2010) (quoting *Commonwealth v. Thomas,* 292 A.2d 352, 357 (Pa.

29

1972)). Determining the existence of probable cause is a totality of the circumstances test where the reviewing court views the affidavit "in a common-sense, non-technical manner." *Id.*

The affidavit for the search warrant in the present case states that Ms. Kishbaugh gave police information regarding alleged sexual assaults by Defendants. Aff. of Probable Cause, May 1, 2015, ¶ 12. Furthermore, Ms. Kishbaugh related to police that she was in contact with Defendant Mable via "Facebook messenger" prior to and after the alleged sexual assaults. *Id.* While Ms. Kishbaugh indicated that she was in the physical presence of Defendant Mable from approximately the evening of June 24, 2015 until the early afternoon of June 25, 2015, she relayed that her communications with Defendant Mable began and continued beyond that time frame. Aff. of Probable Cause, May 1, 2015, ¶¶ 2, 5, 9, 10, 12. The search warrant was authorized for "[a]ll account information from the Facebook profile of Antoine James MABLE." Appl. for Search Warrant and Authorization, May 1, 2015, p. 1 (emphasis in original).

Based upon the affidavit of probable cause, we find that probable cause existed only for Facebook messenger communications between Defendant Mable and Ms. Kishbaugh. The information available to the affiant was that when Ms. Kishbaugh communicated with Defendant Mable via Facebook, it was only through the Facebook messenger service. Aff. of Probable Cause, May 1, 2015, ¶ 12. Furthermore, according to the affidavit, Ms. Kishbaugh had contact with Defendant Mable via Facebook messenger "both prior to this crime occurring and after this crime occurred." *Id.* Such information would lead a person of reasonable caution to conclude that a search of the private messages between Defendant Mable and Ms. Kishbaugh should be conducted. There is no indication in the affidavit of probable cause that Ms. Kishbaugh communicated with Defendant Mable in any other manner on Facebook except via the messenger service.

30

Furthermore, while we understand Defendant Mable avers the timeframe is also overly broad, we disagree. A warrant must contain descriptions that are "as specific[] as is reasonably possible." Given the information the affiant gleaned from Ms. Kishbaugh, we find that a description of all private messages between Defendant Mable and Ms. Kishbaugh would be "as specific[] as is reasonably possible" under these circumstances. According to the information given by Ms. Kishbaugh as contained in the affadavit, she could have had relevant communications with Defendant Mable days or weeks prior to the alleged crimes. Thus, a tailored timeframe would be inappropriate.

For the foregoing reasons, Defendant Mable's Motion to Suppress is GRANTED in part and DENIED in part. All information obtained from Defendant Mable's Facebook page is suppressed except for any and all Facebook messenger communications between Defendant Mable and Ms. Kishbaugh.

Having addressed all issues before us, we enter the following order:

31

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     : NO. 723 CR 2015

       vs.                           :

ANTOINE JAMES MABLE,              :

              Defendant      : Omnibus Pre-Trial Motions

## ORDER

AND NOW, this 2th day of August, 2015, upon review of Defendant Antoine James Mable's Omnibus Pre-Trial Motions, and in consideration of the record, the evidence presented at the hearing on said motions, and the parties' subsequent briefings:

1. Defendant's "Motion to Bar 42 Pa. C.S.A. § 5920 Expert Testimony" is **DENIED**.

2. Defendant's "Motion to Compel Expert Report" is **GRANTED**. Attorney Rhodes shall prepare and submit to the attorney for the Commonwealth a report pursuant to Pa.R.E. 573(B)(2)(b) and the attorney for the Commonwealth shall provide that report to defense counsel on or before September 15, 2015.

3. Defendant's "Motion *in Limine*" to preclude reference to "Gang Affiliation" is **DENIED**.

4. Defendant's "Motion to Suppress Statements Made by Defendant" to the detective from the Monroe County District Attorney's Office is **GRANTED** in part and **DENIED** in part. All statements made by Defendant Mable on May 29, 2015 are hereby suppressed and may not be used by the Commonwealth in its case-in-chief or on rebuttal. Any photographs taken on May 29, 2015 are not subject to suppression.

32

5. Defendant's "Motion to Bar Gang Expert Testimony" is **DENIED**.

6. Defendant's "Motion to Suppress—Facebook" is **GRANTED** in part and **DENIED** in part. All information obtained from Defendant Mable's Facebook page is hereby suppressed except for any and all Facebook messenger communications between Defendant Mable and Ms. Kishbaugh.

7. Defendant's "Motion for Involuntary Psychiatric or Psychological Examination and to Compel Disclosure of Psychiatric and Psychological Treatment Records" is **DENIED**.

8. Defendant's "Petition for Fees for Expert" is **GRANTED**. Defendant Mable is entitled to expert fees for the purpose of hiring a forensic psychologist. These fees have been granted by separate Order.

9. Defendant's "Motion *in Limine* to Preclude Use of the Conclusory Term 'Victim'" is **DENIED**.

BY THE COURT:

MARGHERITA PATTI-WORTHINGTON, P.J.

Cc: Julieane Frey, Esq., ADA
Hillary A. Madden, Esq., Counsel for Antoine James Mable
Holly B. Conway, Esq., Counsel for Christopher John Klement
MPW2015-0026

33

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA      : NO. 723 CR 2015

                 vs.                        :

ANTOINE JAMES MABLE,           :

                Defendant       : Post-Sentence Motion

## OPINION

This matter comes before the Court on Antoine James Mable's ("Defendant") Post-Sentence Motion. Defendant has filed one motion titled "Motion for Modification of Sentence" but seeks multiple forms of relief. Defendant has asked for modification of his sentence,[1] redaction of his Presentence Investigation Report ("PSI"), and a judgment of acquittal or new trial. The facts and procedural history is as follows:

On March 9, 2016, after trial by jury, Defendant was convicted of two counts of Promoting Prostitution[2] and one count of Conspiracy to Commit Promoting Prostitution[3] in relation to the transportation of the victim, Jessica Kishbaugh, to Monroe County for the purposes of becoming a prostitute.[4] The jury was hopelessly deadlocked on the remaining charges and this Court declared a mistrial on those charges for manifest necessity.[5] As of the date of this Opinion, the Commonwealth has not pursued further prosecution or otherwise disposed of

---

[1] In his brief, Defendant withdrew the issue of an incorrect Prior Record Score, and thus no longer offers an argument for modification of his sentence on that ground.

[2] 18 Pa. C.S.A. §§ 5902(b)(3) (felony), (b)(6) (misdemeanor).

[3] § 903(a)(1).

[4] Defendant's case was joined with Co-Defendant Christopher Klement, 1376 CR 2014, however, Co-Defendant Klement entered a guilty plea in this case on October 5, 2015.

[5] The jury was hung on the following charges: Rape—Threat by Forcible Compulsion (§ 3121(a)(2)), Involuntary Deviate Sexual Intercourse—Forcible Compulsion (§ 3123(a)(1)), Aggravated Indecent Assault—Without Consent (§ 3125(a)(1)), Unlawful Restraint (§ 2902(a)(2)), and Indecent Assault—Without Consent (§ 3126(a)(1)).

1

those charges.

A PSI was prepared and on May 23, 2016, this Court sentenced Defendant to 15 to 30 months incarceration for the Conspiracy charge, 15 to 30 months incarceration for the felony Promoting Prostitution charge, and 6 to 12 months incarceration for the misdemeanor Promoting Prostitution charge. The sentences on Conspiracy and felony Promoting Prostitution were ordered to run consecutively while the misdemeanor Promoting Prostitution was ordered to run concurrently, giving Defendant a total aggregate sentence of 30 to 60 months incarceration. Defendant received a time credit of 417 days.

On June 2, 2016, Defendant filed the present Post-Sentence Motion. We held a hearing on July 13, 2016, wherein no evidence was presented by either party. Counsel made argument and we directed briefs to be filed within 30 days. We allowed the Commonwealth an additional 14 days to file a response.[6] Defendant filed his brief a week late, on August 19, 2016. As of the date of this Opinion, the Commonwealth has failed to file a responsive brief.

In his brief, Defendant breaks down his argument into the following issues: (1) whether the evidence was sufficient to find Defendant guilty of Promoting Prostitution; (2) whether the evidence was sufficient to find Defendant guilty of Conspiracy; (3) whether Defendant's PSI should be redacted; and (4) whether this Court should grant a judgment of acquittal or order a new trial on the charges of which Defendant was found guilty. As Defendant's first, second, and fourth issues are interrelated, we will address them together. We note that Defendant did not brief any argument with regard to modification of his sentence, however, as that request was included in his Post-Sentence Motion, we will address it last.

---

[6] We note that Defendant's brief was necessary in order for this Court to render an informed decision for the same reasons we gave the Commonwealth an additional 14 days to respond: Defendant's Motion was too vague to determine the specific relief Defendant sought, particularly with regard to Defendant's request to redact the PSI. Moreover, defense counsel was not able to sufficiently clarify any of the issues at the hearing.

2

## I.    Sufficiency of the Evidence

Defendant argues that the evidence produced at trial was insufficient for the jury to find him guilty of Promoting Prostitution because there was no evidence presented that Defendant was "engaged in the business of prostitution." Def.'s Br., p. 4. Similarly, Defendant argues that there was insufficient evidence to find him guilty of Conspiracy because the Commonwealth presented no evidence that Defendant entered into an agreement with Co-Defendant Klement, or any other person, to transport Ms. Kishbaugh to Monroe County for the purposes of promoting her prostitution. Def.'s Br., p. 9.

The Commonwealth, having failed to file a brief or make argument at the hearing, has no response.

In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Eichinger*, 915 A.2d 1122, 1130 (Pa. 2007); *Commonwealth v. Spotz*, 759 A.2d 1280, 1283 (Pa. 2000). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (quoting *Commonwealth v. Sanders*, 627 A.2d 183, 185 (Pa. Super. 1993)). Moreover, the facts and circumstances need not be absolutely incompatible with the defendant's innocence. *See Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 539 (Pa. Super. 1995). The question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See id.*

3

To be found guilty of Promoting Prostitution under subsection (b)(3), the Commonwealth had to prove beyond a reasonable doubt that Defendant encouraged, induced, or otherwise intentionally caused another to become or remain a prostitute. 18 Pa. C.S.A. § 5902(b)(3). Similarly, to be found guilty of Promoting Prostitution under subsection (b)(6), the Commonwealth had to prove beyond a reasonable doubt that Defendant transported a person into or within the Commonwealth with the intent to promote the engaging in prostitution by that person, or procuring or paying for transportation with that intent. § 5902(b)(6).

The evidence presented at trial, viewed in the light most favorable to the Commonwealth, establishes the following:

In June of 2014, Defendant and Co-Defendant Klement contacted Ms. Kishbaugh, asking if she would like to make money as a prostitute in Monroe County. Notes of Testimony, Jury Trial 3/7/16, pp. 54–56 [hereinafter "N.T., Day 1, p. ___."]. Over the course of several conversations with Defendant and Co-Defendant Klement, Ms. Kishbaugh was informed that the two men would be her pimps and that they would pick her up from Scranton and transport her to Monroe County. N.T., Day 1, pp. 56–58. Additionally, Ms. Kishbaugh understood that as part of this arrangement, Defendant and Co-Defendant Klement would protect her in exchange for half of the money she made as a prostitute. N.T., Day 1, pp. 58–59. Ms. Kishbaugh agreed to this arrangement and Co-Defendant Klement picked Ms. Kishbaugh up from her home in Scranton on June 24, 2014. N.T., Day 1, pp. 59, 69–70. On the way from Scranton to Monroe County, Co-Defendant Klement also picked up Defendant, and the group went to a trailer home.[7] N.T., Day 1, p. 60. While at this home, Defendant and Co-Defendant Klement sexually assaulted Ms.

---

[7] Through testimony other than Ms. Kishbaugh's, the Commonwealth presented evidence that this trailer home was in Polk Township, Monroe County. *See* N.T., Day 1, pp. 153, 155–160.

Kishbaugh.[8] N.T., Day 1, pp. 65–69, 77–79. Co-Defendant Klement forced Ms. Kishbaugh to perform oral sex on him and Defendant forced Ms. Kishbaugh to receive oral sex from him and to have vaginal sex with him. N.T., Day 1, pp. 65–69, 77–79. These assaults were in response to Ms. Kishbaugh changing her mind about the arrangement, making Defendant angry that he had put time and effort in to bringing Ms. Kishbaugh to Monroe County to make money as a prostitute. See N.T., Day 1, p. 65.

Through the night of the 24th and into the morning of the 25th, Defendant and Co-Defendant Klement did not permit Ms. Kishbaugh to leave the trailer home, despite her continued insistence that she had changed her mind. N.T., Day 1, pp. 70–74. Defendant and Co-Defendant Klement hit Ms. Kishbaugh and restricted access to her cell phone in attempts to make her stay in the home. N.T., Day 1, pp. 73–74. Finally, Trooper William Patton testified as a gang expert, presenting evidence that Defendant and Co-Defendant Klement were members of a gang, the Black P-Stones, that participated in an activity known as "gorilla pimping," wherein young, impressionable girls would be lured into prostitution by gang members and not permitted to leave either by force, threat of force, or promise of drugs, while the gang members earned money, through the girls' prostitution, for the gang.[9] Notes of Testimony, Jury Trial 3/8/16, pp. 105–06, 112–13 [hereinafter "N.T., Day 2, p. ___."].

---

[8] We understand that the jury did not find Defendant guilty of the alleged sexual assaults, however, in viewing the evidence in the light most favorable to the Commonwealth on the charges the jury did find beyond a reasonable doubt, we do not decide the issue of Ms. Kishbaugh's credibility and consider the sexual activity as forced, per her testimony. See Cruz-Centeno, 668 A.2d at 539. ("It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced." (quotation omitted)).

[9] Defendant avers in his brief that the jury rendered guilty verdicts solely on the basis of Trooper Patton's testimony regarding Defendant's gang activity. Def.'s Br., p. 6. We are cognizant that this evidence cannot form the basis of a guilty verdict on the grounds that Defendant has the propensity to commit crime, as such a conclusion would be against the Rules of Evidence. See Pa.R.E. 404(b). However, as we stated in our Omnibus Opinion in this case, such evidence can be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Omnibus Opinion, 8/26/15, p. 22 (quoting Rule 404(b)(2)). Furthermore, the jury was instructed to view such evidence only in this limited manner during the jury charge. Notes of Testimony, 3/9/16, pp. 82–83 [hereinafter "N.T., Day 3, p. ___."]. We presume the jury followed our instructions, see Commonwealth v. Jones, 668 A.2d 491, 503–04 (Pa. 1995), and we now view the evidence of Defendant's gang membership in the same way.

The above evidence, viewed in the light most favorable to the Commonwealth, establishes, beyond a reasonable doubt, that Defendant committed both counts of Promoting Prostitution. Defendant's knowledge of and involvement in transporting Ms. Kishbaugh to the trailer home where she was subsequently forced to stay and perform sexual acts is sufficient to support such a conviction and is not so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Cruz-Centeno*, 668 A.2d at 539. These convictions are further supported by the evidence of Defendant's gang membership in that his actions in promoting Ms. Kishbaugh's prostitution were motivated by such membership, thereby also indicating his intent to engage in such promotion, his lack of mistake in doing so, and his knowledge that such promotion was occurring. We are satisfied that the evidence was sufficient to convict Defendant of both counts of Promoting Prostitution.[10]

We further find the evidence was sufficient to convict Defendant of Conspiracy to commit Promoting Prostitution. "A conviction for criminal conspiracy is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citing 18 Pa. C.S.A. § 903). In this case, Defendant was charged with Conspiracy, generally, but the jury found him guilty only of Conspiracy to commit Promoting Prostitution. Thus, the only agreement we need to consider would be an agreement between Defendant and another person to commit the crime of Promoting Prostitution.

When presenting evidence to show a defendant made a criminal agreement with another,

---

[10] Additionally, although Defendant did not physically drive the vehicle that transported Ms. Kishbaugh, he can still be guilty of the misdemeanor Promoting Prostitution charge through accomplice liability. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002). However, in any event, Defendant's individual participation in arranging for Ms. Kishbaugh's transportation, for the purposes of prostitution, makes him guilty of Promoting Prostitution. *See* 18 Pa. C.S.A. § 5902(b)(6).

the Commonwealth will typically not have direct evidence of such agreement, and thus, "[a] conspiracy is almost always proven through circumstantial evidence." *Id.* The Superior Court has established four factors for courts to consider when deciding whether the evidence establishes that a conspiratorial agreement was formed: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Id.* (quoting *Commonwealth v. Olds*, 469 A.2d 1072, 1075 (Pa. Super. 1983)). "The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." *Id.* Additionally, "[o]nce there is evidence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy." *Id.*

In the present case, the evidence presented showed "an association between alleged conspirators." Not only did Co-Defendant Klement pick up and drive Defendant to the trailer home, N.T., Day 1, pp. 69–70, but the two had gone to the same high school, N.T., Day 1, p. 52, 82, seemed to live in the same home, N.T., Day 1, p. 75, and were known to be members of the same gang. N.T., Day 1, p. 83. Furthermore, both Defendant and Co-Defendant Klement had been in contact with Ms. Kishbaugh about the same plan to bring her to Monroe County for prostitution. N.T., Day 1, pp. 54–56. The evidence also showed Defendant had "knowledge of the commission of the crime." Defendant was involved in the initial communications with Ms. Kishbaugh and explained his role as a pimp. N.T., Day 1, pp. 54–59. Indeed, in his brief, Defendant emphasizes that Ms. Kishbaugh was clear that her intentions upon arrival in Monroe County were to become a prostitute, Def.'s Br., p. 7, and Ms. Kishbaugh candidly testified to the same at trial. N.T., Day 1, pp. 57–58. Further, the evidence at trial clearly established, and

Defendant does not deny, *see* Def.'s Br., pp. 8–10, his "presence at the scene of the crime." Lastly, the evidence showed Defendant's "participation in the object of the conspiracy." By arranging for transportation, not allowing Ms. Kishbaugh to leave, and forcing her to perform sexual acts, with the ultimate goal that she become a prostitute, Defendant participated in the conspiracy to promote Ms. Kishbaugh's prostitution.

We understand that Defendant emphatically argues "mere presence at the scene of an incident involving purported criminal activity is insufficient to demonstrate an individual's guilt." Def.'s Br., p. 10. While we agree with that statement generally, *see Lambert*, 795 A.2d at 1016, the evidence in Defendant's case, as discussed above, shows much more than his "mere presence." The case Defendant cites to support this argument, *Commonwealth v. Mills*, 478 A.2d 30 (Pa. Super. 1984), is readily distinguishable.

In *Mills*, the defendant was charged with conspiring with his co-defendant, William Gola, to sell methamphetamine to a Confidential Informant ("CI") and an undercover agent from the Bureau of Narcotics Investigation ("agent"). *Mills*, 478 A.2d at 31. When Mills arrived at Gola's apartment, the CI and agent were already there and had spoken with Gola about procuring methamphetamine from a man named "Karl." *Id.* When "Karl" could not be reached, Mills offered to sell the two men methamphetamine from the shipment he was to receive later that evening, but the offer was declined and the CI and agent returned to their car. *Id.* at 32. At the agent's request, the CI reentered Gola's apartment and asked him to come to the car. *Id.* When Gola came outside, Mills came with him and the four men proceeded to drive around looking for "Karl" and a quantity of methamphetamine. *Id.* No drugs or money were exchanged, however, Mills and Gola were both charged with Conspiracy approximately one month later. *Id.* at 31–32.

The Superior Court found that Mills could not be found guilty of Conspiracy because

8

"the Commonwealth's evidence, direct *and circumstantial*, failed to prove the existence of a conspiracy between [Mills] and Gola." *Id.* at 33 (emphasis added). The Superior Court noted that the evidence showed Mills was aware the CI and agent were seeking methamphetamine and that Mills was willing to independently sell this substance to them. *Id.* However, the Court could not conclude from the evidence before it that Mills and Gola had formed an agreement to sell the methamphetamine together or were working to accomplish that common goal. *Id.* The Court also noted that there was no evidence of prior dealings between Mills and the CI, no statements from Mills or Gola that they were, or had ever, worked together, and no evidence that Mills would participate or profit from the transaction between Gola and the CI and agent. *Id.*

Defendant's case is very different. While there may not have been direct evidence of statements indicating Defendant and Co-Defendant Klement were working together to accomplish a common, criminal goal, the circumstantial evidence indicates these two men had an agreement. Defendant and Co-Defendant Klement were members of the same gang and engaged together in activity that correlated with the gang's methods of "gorilla pimping." *See* N.T., Day 1, pp. 54–59; N.T., Day 2, pp. 105–06, 112–13. Both Defendant and Co-Defendant Klement were in contact with Ms. Kishbaugh to settle details of the arrangement. N.T., Day 1, pp. 54–56. Both men reassured Ms. Kishbaugh that they would protect her and expect a cut of her profits in return. N.T., Day 1, p. 58–59. Finally, both men accompanied Ms. Kighbaugh to the trailer home where she was subsequently assaulted and kept from leaving. N.T., Day 1, pp. 59–60, 67. In *Mills*, there was no evidence, direct or circumstantial, that showed any connection between Mills and Gola. *Mills*, 478 A.2d at 33. Where the Superior Court in *Mills* faced a record devoid of connection between co-defendants, we face a very different scenario here. Thus, *Mills* is distinguishable and Defendant's argument in reliance thereon fails.

9

Defendant also alleges the Commonwealth cannot rely on his "purported gang affiliation" to establish the existence of an agreement sufficient to support a conviction for Conspiracy. Def.'s Br., p. 11.[11] However, this argument has no merit as the four factors from *Lambert* were supported by independent, non-gang related evidence, which we have discussed above, at length. *See Lambert*, 795 A.2d at 1016. Despite Defendant's insistence, evidence of his gang affiliation was not the only evidence presented against him.

For the reasons stated above, Defendant's Motion for a New Trial or Judgment of Acquittal based on insufficiency of the evidence is DENIED.

## II.    *Redact Defendant's PSI*

Defendant argues there are certain portions of his PSI that should be redacted because they are prejudicial. Def.'s Br., pp. 15–16. In his Motion, Defendant alleges prejudice would come in the form of forced sexual offender treatment wherein he would have to "admit" to certain actions before he could be cleared as successfully completing the treatment. Def.'s Post-Sentence Mot., ¶ 16(e). Defendant argues that Pennsylvania Rule of Criminal Procedure 703(E) would allow this Court to redact these portions of his PSI so that he will not suffer any prejudice when said report is forwarded to the Department of Corrections. Def.'s Post-Sentence Mot., ¶ 16(d). The Commonwealth, having failed to file a brief or make argument at the hearing, has no response.

Rule 703 governs the disclosure of PSIs. Pa.R.Crim.Pro. 703. This Rule states that PSIs are not of public record and that they shall be disclosed to limited parties, under narrow circumstances. *Id.* Rule 703 further allows for a defendant or the Commonwealth to allege factual inaccuracies contained within the report and requires that the sentencing judge order any

---

[11] Again, we note that the jury was instructed to view the evidence of Defendant's gang activity not as evidence that he committed a crime, but as evidence that his gang affiliation may show his intent, motive, knowledge, etc.

necessary corrections. Rule 703(B). Subject to any corrections made at the time of sentencing, PSIs are subsequently forwarded to relevant correctional institutions and departments of probation and parole. Rule 703(C). The confidentiality and non-public nature of these reports remains throughout their dissemination. *Id.* Subsections (D) and (E) of the Rule allow for the sentencing judge to impose additional disclosures or confidentiality measures, as necessary. Rule 703(D), (E). Specifically, subsection (E) states that "[t]he sentencing judge may at any time impose further conditions of confidentiality on a person or agency receiving a report" pursuant to Rule 703. Rule 703(E).

We do not find that Defendant has provided sufficient evidence to warrant alteration of his PSI pursuant to Rule 703. At his sentencing hearing, Defendant and his counsel were given the opportunity to make any corrections to the PSI or to object to any portion of it. *See* Rule 703(B). No corrections were requested nor any objections lodged and we imposed sentence.[12] The plain text of subsection (E) allows for this Court to "impose further conditions of confidentiality *on a person or agency*," not on the PSI document itself. Rule 703(E). Furthermore, Defendant has presented no evidence of the alleged prejudice he would suffer should his PSI remain unredacted, save for his own averments and counsel's "experience in the past." Def.'s Post-Sentence Motion, ¶ 16(e). Whatever "sexual offender treatment" Defendant alleges will be imposed by the Department of Corrections remains unknown. Defendant states that he "will *likely* be ordered to attend and complete sexual offender treatment by the DOC," Def.'s Post-Sentence Mot., ¶ 16(e) (emphasis added), but has provided no proof that such treatment has been or will be ordered.

---

[12] Defense counsel did indicate at sentencing that Defendant had an issue with one of the adult offenses listed in his PSI: the offense from October 21, 2009, in Brodheadsville, Pennsylvania. Defendant indicated at sentencing that he did not believe that was an accurate record. Defense counsel indicated on the record that he would check into that offense and that if there was a problem, he would address it in his post-sentence motions. As no such objection or correction was raised in Defendant's Post-Sentence Motion, we do not consider this issue to be a requested correction.

According to our Sentencing Order, we have not required Defendant to participate in or complete *any* treatment offered by the Department of Corrections. *See* Sentencing Order, 5/23/16. Furthermore, Defendant's incarceration, as far as this Court is concerned, is not contingent on the successful completion of any such treatment. *Id.* Lastly, Defendant's convictions do not carry a statutory requirement of sexual offender treatment, or even Megan's Law registration. *See* 42 Pa. C.S.A. § 9718.1(a)(5) (requiring sexual offender treatment "if the person is incarcerated in a State institution for . . . [p]rostitution, as defined in section 5902 . . . *if the offense involved a minor under 18 years of age*" (emphasis added)); § 9799.14(c)(2) (requiring Tier II registration only for Promoting Prostitution under subsection (b.1), relating to prostitution of minors).

To the extent that the Department of Corrections and/or Board of Probation and Parole has imposed, or will impose, additional requirements on Defendant, he must take those issues up with the appropriate authority. *See, e.g., Johnson v. Pennsylvania Board of Probation and Parole*, 532 A.2d 50, 53–54 (Pa. Cmwlth. 1987) (holding "a prisoner may not obtain judicial review of a Board order denying a parole application" but must instead follow the procedures established by the Board); *Commonwealth v. Danysh*, 833 A.2d 151, 152–53 (Pa. Super. 2003) (holding that civil actions, actions in equity, actions in mandamus, and petitions for review of governmental determinations, specifically those involving the Department of Corrections, fall within the exclusive subject matter jurisdiction of the Commonwealth Court).

Accordingly, Defendant's Motion to redact his Pre-Sentence Investigation Report is DENIED.

### III. Modification of Sentence

Defendant offers two reasons this Court should modify his sentence: (1) this Court

12

improperly relied on Defendant's conduct while incarcerated and out on bail as aggravating circumstances and (2) even if we properly considered Defendant's conduct while incarcerated and out on bail, such aggravating circumstances were greatly outweighed by mitigating circumstances. Defendant avers that in properly weighing the aggravating and mitigating circumstances, he should have received a lesser minimum sentence. The Commonwealth, having failed to file a brief or make argument at the hearing, has no response.

Sentencing is within the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004). Abuse of discretion will be found if the sentence is "manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* When fashioning a sentence, the trial court is directed by statute to consider certain factors. These factors are: (1) protection of the public; (2) "the gravity of the offense as it relates to the impact on the life of the victim and on the community;" and (3) Defendant's rehabilitative needs. 42 Pa. C.S.A. § 9721(b). A sentence can be invalid if the sentencing court "relied in whole or in part on an impermissible factor." *Commonwealth v. Berrigan*, 535 A.2d 91, 105 (Pa. Super. 1987). Furthermore, when imposing a sentence for a misdemeanor or felony, the sentencing court must state on the record its reasons for the sentence imposed. 42 Pa. C.S.A. § 9721(b). The sentencing judge may order a PSI report which must "include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence." Pa.R.Crim.Pro. 702(A).

A PSI was prepared by Probation Officer Kim Borger, wherein the following aggravating circumstances were listed: (1) Defendant was arrested, pleaded guilty, and was sentenced for Public Drunkeness while on bail in this case; (2) Defendant has had numerous disciplinary infractions in the Monroe County Correctional Facility while incarcerated in this case, resulting

13

in his confinement to the Restrictive Housing Unit on two occasions; and (3) Defendant was arrested, pleaded guilty, and was sentenced for Assault by a Prisoner and Simple Assault while incarcerated in this case. On May 23, 2016, we sentenced Defendant to 15 to 30 months incarceration for the Conspiracy charge, 15 to 30 months incarceration for the felony Promoting Prostitution charge, and 6 to 12 months incarceration for the misdemeanor Promoting Prostitution charge. The two felony sentences were run consecutively and the misdemeanor sentence was run concurrently for a total, aggregate sentence of 30 to 60 months incarceration.

On the record at Defendant's sentencing hearing, we adopted the aggravating circumstances contained in the PSI. Defendant avers we improperly relied on irrelevant aggravating circumstances, namely, Defendant's behavior on bail and while incarcerated. As the Sentencing Court, we must consider not only the impact of a specific offense upon a specific victim and a specific community, but we must also consider the general protection of the public from a defendant and a defendant's individual rehabilitative needs. 42 Pa. C.S.A. § 9721(b). By including Defendant's behavior while on bail as an aggravating circumstance, we were considering the general protection of the public. Defendant was clearly unable to conform his behavior to the laws which apply to all citizens or to the additional rules and regulations imposed upon him as conditions of his bail. Thus, our consideration of his behavior while on bail in this case was appropriate. Similarly, when we considered the numerous disciplinary infractions and criminal charges incurred by Defendant while he was incarcerated in this case, we were considering his rehabilitative needs. Such a lengthy disciplinary record while incarcerated for little over a year shows that Defendant had not yet reached a point within that year where incarceration was having a rehabilitative effect. Even as late as December of 2015, Defendant was still getting into fights and unable to conform his behavior to the rules and regulations of the

Monroe County Correctional Facility. Thus, our consideration of Defendant's disciplinary history while incarcerated was appropriate.

Having found that we relied on proper aggravating circumstances, we move on to address whether we should have found that said aggravating circumstances were outweighed by the mitigating circumstances.[13] On the record at Defendant's sentencing hearing, while we did not specifically state Defendant's age was a mitigating circumstance, we did consider Defendant's young age—25 years old—when we imposed sentence. Further, we considered that, prior to his adoption at 8 years old, Defendant had a troubled childhood.[14] Nevertheless, we stated that the recommendations contained in the PSI were entirely appropriate for this case, given the aggravating and mitigating circumstances. Accordingly, we imposed aggravated range sentences on all three crimes.[15] We clearly and concisely stated our reasons for imposing aggravated range sentences on the record and we have not been presented with any new or additional information that would warrant a different decision. Accordingly, Defendant's Motion to Reconsider Sentence is DENIED.

Having addressed all issues before us, we enter the following order:

---

[13] The PSI did not list any mitigating circumstances nor did defense counsel argue for any such circumstances at sentencing.

[14] We did note, however, that while Defendant may have had a rough life prior to his adoption, his life after adoption was markedly more stable and that from then on, Defendant had a good childhood.

[15] The Sentencing Guideline ranges for Defendant's Conspiracy and felony Promoting Prostitution charges were identical: with an Offense Gravity Score of 5, the standard range was 1 to 12 months, with an aggravated range of plus or minus 3. The standard Sentencing Guideline range for Defendant's misdemeanor Promoting Prostitution charge, with an Offense Gravity Score of 3, was restorative sanctions to 6 months, with an aggravated range of plus or minus 3. These calculations were provided correctly in the PSI, given that Defendant had a Prior Record Score of 1. Additionally, Defendant does not seem to dispute these calculations, but instead challenges our discretion in imposing aggravated range sentences. See Def.'s Post-Sentence Mot., ¶¶ 10–15.

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA


COMMONWEALTH OF PENNSYLVANIA      : NO. 723 CR 2015

         vs.          :

ANTOINE JAMES MABLE,      :

             Defendant      : Post-Sentence Motion

## ORDER

AND NOW, this 19th day of September, 2016, upon review of Defendant's Post-Sentence Motion, and in consideration of the record and the parties' subsequent briefings, Defendant's motion is DENIED.

Defendant is advised that he has thirty (30) days from the date of this Order within which to file an appeal with the Superior Court of Pennsylvania.

BY THE COURT:

MARGHERITA PATTI-WORTHINGTON, P.J.

cc:      Julieane Frey, Esq., ADA
       Thomas Sundmaker, Esq., Counsel for Defendant
       Clerk of Courts
       MPW2016-0038

2016 SEP 19 PM 1 56
MONROE COUNTY, PA
CLERK OF COURTS